104 So.2d 684

James Paul STEWART

v.

STATE.

6 Div. 418.

Court of Appeals of Alabama.

March 4, 1958.

Rehearing Denied March 25, 1958.

Ben F. Ray, Birmingham, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

Stewart stands convicted of raping his first cousin, then a girl of sixteen: sentenced to ten years' imprisonment, he appeals.

The prosecutrix had come to live with the Stewarts to look after their nine months old baby while Mrs. Stewart worked. The morning of December 22, 1955, Stewart walked with his wife to her bus stop. After she caught the bus for work, he went to a grocery store and returned home with some bread and milk. The remainder of the morning he lay on the bed.

The baby's crib was in the bedroom near the bed on which Stewart lay. The prosecutrix on several occasions had to tend the baby. Sometime around noon Stewart (according to the State) began to question the girl about her ever having had sexual intercourse. The baby started "squalling" and when she came into the bedroom, the defendant rose up and grabbed her from behind, pulled her onto the bed, and after a struggle of some ten or fifteen minutes, he managed to get her clothes partly off and ravished her.

Stewart testified the prosecutrix, by her conversation, conduct and physical contact, in effect, seduced him or at all events so aroused him that his having intercourse with her was the proximate result of her will as much as of his.

■ There was evidence for the State of early complaint by the prosecutrix, medical corroboration tending to show force, and of flight by Stewart, who was not arrested until some eleven days after a warrant was taken out for him.

■ We consider the State made a prima facie case and the resolution of the conflicting tendencies of the testimony was within the province of the jury.

■ At Stewart's request, the trial judge gave the following charge:

"C. If you believe from the evidence * * * [prosecutrix] encouraged the defendant by word or act to have sexual intercourse with her *and later repented her participation in said illicit relation* you would not be authorized to convict him as charged in the indictment." (Italics ours.)

Charge D, which, instead of the italicized language above, used "and later became distressed with remorse or self-reproach because of what she had done," was no better than charge C. The refusal of charge D was not error. Code 1940, T. 7, § 273, fourth sentence.

 The court refused a charge which was affirmative in nature, and since the State made a prima facie case, its refusal was correct.

 After the jury had been out all night, they asked to communicate with the trial judge: on their being brought back in the court room, one juror indicated some perplexity as to the line of demarcation of rape where a woman submitted "up to a certain extent" and then changed her mind. The jury received further instructions, to which no exception was taken. Accordingly, there was no error. Montgomery v. State, 204 Ala. 389, 85 So. 785.

 During this further instruction of the jury, the trial judge mistook the jury's confusion for dissension:

"* * * You gentlemen ought to be able to get together on this case. I can't tell you what to do. Of course, I don't know anything about it; that is up to you; that is what jury trials are for—twelve men to get together.

"* * * You are twelve intelligent men; you are above the average intelligence. I have looked over your records, I know you are, and, if possible, you should get together. Of course, don't surrender principle to get together, but it occurs to me that twelve intelligent men should, by discussing the evidence and exchanging views in a peaceful, quiet manner; I thought maybe you had gotten at loggerheads and maybe developed unfriendliness; that is bad, gentlemen. You should discuss the evidence in a friendly basis and try to arrive at a just and fair decision from the standpoint of the State as well as the standpoint of the Defendant; * * *"

Again:

"I would admonish you to try to discuss it; don't get at loggerheads; that is bad; be friendly—

"Juror: Your Honor, I would like to make a statement; Nobody has been mad at all, as far as that goes.

"The Court: Well, argue it.

"Juror: Nobody has been mad at all, period.

"The Court: All right, I got the idea that maybe there had been a little dissension. Well, all right, then, that is mighty fine; I am glad that is true.

"All right, gentlemen, go back and see what you can do. Do your best to get together."

We think a comparison of the judge's remarks here with those in Meeks v. State, 38 Ala.App. 172, 81 So.2d 616, where the jury was offered sleeping quarters in the jail, shows no attempt at what can reasonably be called duress or compulsion. The judge is more than mere moderator, and, though never tolerated as a tyrant, he has the right and duty to see that the business of the court is handled as expeditiously as fairness to the parties permits.

We have reviewed the entire record and find no prejudicial error.

Affirmed.