Rape; twelve years.
The prosecutrix testified that in April of 1981, she lived with her two small children in an apartment complex in Oxford, Alabama. Around 4:00 or 4:30 A.M. on April 30, 1981, she was awakened by a noise which she thought came from the complex. When she heard the noise again, she turned over and saw a man standing in front of her bed. She screamed and the man put a knife to her throat and threatened to kill her if she was not quiet.
Although there was no light on in the bedroom, there was a street lamp at the corner of the prosecutrix' building which shone into the bedroom. The prosecutrix was able to identify the man in her room as the appellant. She testified that she did not know appellant personally, but that he was the brother of her next-door neighbor. She had seen appellant several times, but had only spoken to him on one previous occasion. The prosecutrix stated that on the day before this occurrence, appellant's sister and brother-in-law had moved out of the apartment next door.
The appellant instructed the prosecutrix to take off her underwear. He then pulled down his jeans and raped her. The prosecutrix stated that the attack lasted at least an hour. Appellant attempted anal intercourse several times, but was unsuccessful and each time returned to normal sexual intercourse. During most of the attack, appellant held the knife to the prosecutrix' throat or ribs. The prosecutrix testified that appellant was unable to ejaculate and finally left her apartment.
After appellant left, the prosecutrix called a neighbor, Faye Moore. Ms. Moore came to the prosecutrix' apartment and called the complex security officer. Before the security officer arrived, the prosecutrix went back to her bedroom to change clothes. At that time she found a wallet in her bed containing appellant's drivers' license. *Page 654 
Lt. Bobby Parker of the Anniston Police Department testified that in April, 1981, he was working a second job as the security officer at the apartment complex where the prosecutrix lived. Parker stated that early on the morning of April 30, 1981, he was called to the prosecutrix' apartment by Faye Moore. The prosecutrix told him she had been raped and he called Sgt. Wood of the Oxford Police Department. He also took custody of the wallet found by the prosecutrix and later turned it over to Sgt. Wood. He stated that the prosecutrix was "very emotionally upset."
Sgt. Donald Wood testified that the prosecutrix was hysterical when he arrived in response to Parker's call. After the prosecutrix calmed down, Wood took her to the emergency room of a local hospital for an examination. Before leaving for the hospital, Wood had the prosecutrix collect the underwear she had had on. He later returned to the prosecutrix' apartment and collected the T-shirt she was wearing at the time of the attack and the sheets and pillow cases from the bed. These items, along with the evidence obtained during the medical examination of the prosecutrix, were later delivered to the crime lab.
Sgt. Wood had appellant brought in for questioning later on the day of the attack. He obtained a pubic combing and known pubic and head hairs from appellant. After advising appellant of his rights, Sgt. Wood questioned him about the attack on the prosecutrix. Appellant first denied seeing the prosecutrix that morning or being at her apartment. He then gave a statement to Sgt. Wood that he had paid the prosecutrix twenty-five dollars for sex the night before.
According to appellant's statement, he left his parents' house at 8:00 or 8:30 on the night of April 29th, and went to his sister's and brother-in-law's residence. He left their home around 10:00, went to a convenience store and purchased beer, and then went to the prosecutrix' apartment at her invitation. He stated that he had sex with the prosecutrix and left her apartment at approximately 12:30. He then went to Briggs' (a bar), where he stayed until closing time, around 3:30 A.M. After leaving Briggs', appellant returned to his parents' home. He woke them up coming in and talked to them a few minutes before going to bed.
When questioned about his wallet, appellant stated that he lost it while helping his sister and brother-in-law move on Tuesday. The attack on the prosecutrix occurred on Thursday morning.
Dr. Howard McVeigh examined the prosecutrix on the morning of April 30, 1981. He performed a flourescent light test for the presence of semen, which was negative, and took vaginal and rectal smears. A nurse performed a pubic combing and obtained known pubic hairs from the prosecutrix. Dr. McVeigh testified that the prosecutrix' physical condition was not consistent with normal non-forced sexual intercourse.
John Case, a criminalist with the Alabama Department of Forensic Sciences, testified that he found evidence of semen in the vaginal smears taken from the prosecutrix and on the top sheet taken from the prosecutrix' bed. The pubic combings taken from appellant revealed two pubic hairs dissimilar to appellant's, but consistent with known pubic hairs of the prosecutrix. Pubic hairs taken from the T-shirt worn by the victim on the night of the attack and from the bed sheets were consistent with known pubic hairs of appellant.
Appellant did not testify, but did call three witnesses, his brother, his brother-in-law, and one Tammy Putt, who testified that appellant had lost his wallet on Wednesday, the day before the attack on the prosecutrix, while helping his sister and brother-in-law move. Appellant's brother, Mark Terry, also testified that he was with appellant at Briggs' on the night of April 29th, from 11:00 or 12:00 until approximately 3:30 A.M. Terry further testified that appellant told him that he (appellant) had been to the prosecutrix' apartment at her invitation prior to coming to Briggs'.
Faye Moore testified that she received a call from the prosecutrix around 5:30 on the *Page 655 
morning of April 30, 1981. When Ms. Moore arrived at the prosecutrix' apartment, the prosecutrix told her that she had been raped. Ms. Moore stated that she asked the prosecutrix if she knew who her attacker was and the prosecutrix replied that she did not, but that he lived in the apartment complex. When the prosecutrix found the wallet, Ms. Moore looked at appellant's picture on the driver's license and asked the prosecutrix if she knew who that was. According to Ms. Moore, the prosecutrix stated that she did not know who the person in the picture was and asked Ms. Moore who he was. Ms. Moore told the prosecutrix that he was the brother of the woman who had lived next door to her (the prosecutrix) until the day before.
The State called two witnesses in rebuttal. Appellant's father testified that appellant was at home when he woke up at 5:00 A.M. on April 30, 1981. He further stated that he did not know what time appellant returned home because he did not see appellant come in.
James Bryant testified that he had been a bartender at Briggs' on April 29, 1981. He stated that he first saw appellant that night around 10:30, but that it would not have been as late as 12:30. On cross-examination, he testified that appellant's drinks were placed on his brother's tab and that he did not see appellant's wallet that night.
 I
Appellant asserts that the jury verdict was "not supported by the overwhelming weight of the evidence."
The State's evidence, as set out above, was sufficient to establish a prima facie case and the trial judge was correct in overruling appellant's motion to exclude. Appellant introduced evidence showing that he had lost his wallet before the day of the attack. There was also some evidence of an alibi.
Where, as in this case, there is conflicting evidence presented by the prosecution and the defense, it is for the jury to resolve the conflict and determine the defendant's guilt or innocence. Mayberry v. State, 281 Ala. 573,206 So.2d 585 (1968); Ellis v. State, 244 Ala. 79, 11 So.2d 861 (1943);Gilmore v. State, 358 So.2d 501 (Ala.Cr.App. 1978); Stewart v.State, 39 Ala. App. 410, 104 So.2d 684, cert. denied, 267 Ala. 697, 104 So.2d 686 (1958). In making its determination, the jury may believe or disbelieve all or any part of the testimony presented by either side. Smelcher v. State, 385 So.2d 653
(Ala.Cr.App. 1980); Gilmore v. State, supra; Harris v. State,333 So.2d 871 (Ala.Cr.App. 1976). As the Court of Appeals stated in Autry v. State, 34 Ala. App. 225, 38 So.2d 348 (1948):
 "The jury apparently saw fit to accept the testimony of the prosecutrix, and the other witnesses presented by the State. This conclusion was solely within the jury's province. Neither the trial court, nor this court on review, can usurp the province of the jury in weighing the evidence and passing upon the credibility of the witness. . . . This responsibility is solely upon the jury, the members of which have seen and heard the witnesses, and are in position to sift the truth from live testimony far better than a reviewing court can perform this function by reading such testimony in cold type in a record. Brooks v. State, 8 Ala. App. 277, 62 So. 569."
See also, Dolvin v. State, 391 So.2d 666 (Ala.Cr.App. 1979), affirmed on other grounds, 391 So.2d 677 (Ala. 1980); Hawkinsv. State, 53 Ala. App. 89, 297 So.2d 813, cert. denied, 292 Ala. 723, 297 So.2d 817 (1974).
 II
Appellant moved for a new trial on the ground that he failed to receive a fair and impartial trial due to the improprieties on the part of one of the jurors. A hearing was held on the motion. Appellant testified that he "knew of" a juror, Mary McWilliams. He stated that he had gone to grammar school with Ms. McWilliams, although she was several years older, and that they rode the same school bus for two years. According to appellant, his brother was personally acquainted with Ms. McWilliams. *Page 656 
Appellant's trial lasted three days, November 30, December 1, and December 2, 1981. Appellant testified at the hearing that a Ray Williams had informed him that Ms. McWilliams had come by the gas station where Williams was employed on the evenings of the first two days of trial and talked to him (Williams) about the trial. Appellant first met Williams some four or five weeks after the conclusion of the trial. It was at this time that Williams told appellant about Ms. McWilliams coming by the station.
Bobby Character testified that he overheard the November 30th conversation between Ms. McWilliams and Ray Williams. He stated that Ms. McWilliams said she "didn't have to hear no more of the [evidence], she knew he was guilty" and that she had "prior knowledge" of the case. On cross-examination, the witness showed a great deal of confusion over the date he heard this conversation.
Ray Williams testified that Ms. McWilliams told him that she recognized appellant in the courtroom and that she thought appellant was probably guilty. She also told him a friend of hers had been raped and she had been a witness in that trial. He stated that on December 1st (the second day of appellant's trial), Ms. McWilliams told him that appellant's father's testimony had hurt appellant. During examination by the court, however, a check with the court reporter revealed that appellant's father did not testify until December 2nd. On cross-examination, Williams exhibited confusion over the dates and conversations involved.
The juror, Mary McWilliams, testified that she did not know appellant at the time of his trial and that, to her knowledge, she had not ridden a bus with him in grammar school. She knew appellant's brother by name, but was not personally acquainted with him. She further stated that she had no knowledge of appellant's case prior to sitting on the jury. Although she went to the gas station where Williams worked during appellant's trial, she did not discuss the case with Williams. Ms. McWilliams testified that she had once been a witness in a rape case. She also stated that she had a conversation with Character after appellant's trial in which Character stated that appellant had asked Williams to make a statement and that Williams was being paid to make his statement.
Two witnesses were called by the State. Their testimony essentially corroborates portions of Ms. McWilliams' testimony and need not be recounted.
At the close of the hearing, the trial judge denied appellant's motion for a new trial. He stated:
 "I can't find that there has been any showing whatsoever by credible, believable evidence in this hearing that there was any juror misconduct whatsoever. "In fact, I'm thoroughly convinced that you're [the appellant] guilty of suborning perjury from some of the witnesses that testified here today; at least one of them and have committed it yourself. . . . I do find that you've not established the facts in your motion by believable credible evidence and I don't find where the State's witnesses were in any way unbelievable."
 III
Appellant contends that Ms. McWilliams' alleged conversation with Ray Williams during the course of the trial entitles him to a new trial.
This case is factually very similar to Hall v. State,348 So.2d 870 (Ala.Cr.App.), cert. denied, 348 So.2d 875 (Ala. 1977), cert. denied, 434 U.S. 1021, 98 S.Ct. 745,54 L.Ed.2d 768 (1978). In Hall, a juror's son and one Johnny Snow testified at the hearing on a motion for new trial that the juror had told his son that he (the juror) did not like appellant, that appellant's father owed him money, and that he was going to find appellant guilty. The juror testified in rebuttal. He stated that he did not know appellant before the trial and denied saying that appellant's father owed him money or that he was going to find appellant guilty. Our holding inHall applies equally well to the instant case: *Page 657 
 "The evidence pertaining to the misconduct of the juror [McWilliams], submitted at the hearing on the motion for a new trial, was in conflict. It was the duty of the trial judge to exercise his reasonable discretion in weighing the evidence presented and to reach a decision thereon. His ruling will not be disturbed in the absence of a showing of abuse of discretion, and this Court will indulge in every presumption in favor of the correctness of the ruling of the trial judge. Although the testimony was conflicting we find that the trial judge's exercise of discretion in making his determination was reasonable, and we therefore will not disturb the trial court's decision." (Citations omitted) 348 So.2d at 875.
 IV
Appellant maintains that the juror, McWilliams, was biased because a friend of hers had been the victim of a rape and that he therefore did not receive a fair and impartial trial.
The rule in Alabama is that a challenge to the composition of a jury must be made before the jury is empaneled and sworn. A challenge which comes for the first time in a motion for new trial comes too late and amounts to a waiver of the objection.Williams v. State, 342 So.2d 1328 (Ala. 1977); Durden v. State,394 So.2d 967 (Ala.Cr.App. 1980), cert. denied, 394 So.2d 977
(Ala. 1981); DeLoach v. State, 361 So.2d 19 (Ala.Cr.App. 1977), cert. denied, 361 So.2d 21 (Ala. 1978). An exception to this rule exists for matters which were not known, or by the exercise of due diligence, could not have been known before trial. Williams v. State, supra.
The matter complained of by appellant does not fall within this exception. The fact that Ms. McWilliams knew the victim of a rape or that she had once been a witness in a rape case could have been discovered by due diligence. Appellant was afforded ample opportunity to question the venire during the voir dire examination. The record reveals that appellant's counsel asked whether any member of the venire had ever been the victim of a rape or charged with that offense. No inquiry was made as to whether any member knew a victim of a rape or had been a witness in a rape case.
 V
Appellant also asserts as grounds for a new trial that Ms. McWilliams failed to answer truthfully a question propounded to the venire during the voir dire examination. The venire was asked if any member was acquainted with appellant or any member of his family. Ms. McWilliams made no response.
Appellant testified at the hearing that he "knew of" Ms. McWilliams prior to trial and that he knew his brother knew her. Clearly then, this was a matter known to appellant at the time Ms. McWilliams failed to respond to the question. For the reasons stated in part IV above, appellant's challenge to Ms. McWilliams on this ground comes too late. See also Wynn v.State, 423 So.2d 294 (Ala.Cr.App. 1982). Moreover, Ms. McWilliams testified at the hearing that she did not know appellant's brother.
We have reviewed every contention raised by appellant and found no error. The judgment of conviction by the Calhoun Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur.