Appellant was convicted of rape in the first degree and sentenced to imprisonment for life. As no issue is presented on appeal as to the sufficiency of the evidence to support the verdict of the jury finding defendant guilty, we agree with appellant that there is no good reason to recite the evidence comprehensively. Except for references to the evidence bearing upon the issues raised on appeal, we limit our summary of the evidence to the brief statement of the facts contained in appellant's brief, as follows:
 "The facts for purposes of this review may be very briefly stated. Where detailed statements of fact are required they will be set out in argument.
 "All elements of the State's case may be found in the testimony of its first witness, Janet Anderson.
 "She testified that she arrived in Montgomery at the Ramada Inn, on the Southern By-Pass, about 4:30 in the afternoon, on January 30, 1980. She arrived with a fellow worker, Dr. Robert Sparmicht (a non-medical doctor). They had adjoining rooms. It took about 5 minutes to check in. It took about 10 minutes to unpack and change clothes. She then went to Dr. Sparmicht's room. (R-10-21).
 "She heard a noise, a man walked in. He had a gun. She described him. She described what then took place. She described a rape. (R-22-53).
 "She described what further happened and the man leaving. (R-53-62).
"She identified Primm as the assailant. (R-59).
 "The State thereafter called Dr. Sparmicht. It introduced many exhibits. It called a jail mate who testified that Primm admitted his guilt to him.
 "It is [sufficient] at this point to say that evidence for the defense consisted of vigorous cross-examination; the introduction of many exhibits; and many witnesses who stated they had not seen Primm at the Ramada Inn at the time questioned, nor his car (a very unique sports car).
 "The father of the defendant testified to . . . facts which would make it virtually impossible for the defendant to have been at the Ramada Inn at the time the State's witnesses said he was there. Identification and opportunity to observe, and the long lapse of time was stressed by Primm's counsel in an effort to show that he was innocent as claimed."
The first of the three issues presented by appellant is thus stated in his brief: ". . . DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ITS REFUSAL TO PERMIT THE DEFENSE TO MAKE A SHOWING FOR THE WITNESS BEARD?" Appellee's one-page response to appellant's first issue is captioned: "A CONTINUANCE WAS PROPERLY DENIED." Appellant is represented on appeal by counsel different from the two employed attorneys who represented him on the trial. In the brief of counsel for appellant as to the first issue, it is stated:
 "The record reflects that the trial Court had granted the defense a continuance. (R-733). Then on the 30th day of July, 1982, counsel for Primm got a call to appear in Court at 10:45 a.m. that day for a hearing on the matter of the continuance. (R-733).
 "The Court then ordered trial set . . . to begin on August 9, 1982. (R-733).
 "In and about its efforts to protect the Constitutional rights of the accused to compulsory process of witnesses, counsel *Page 549 
for Primm filed in the Office of the Circuit Court on the 6th of August, 1982, an affidavit identified in the record as exhibit `A'. (R-733-736).
 "The affidavit set forth in substance that a material witness for Primm could not attend court in that he was on duty with the Military in the State of Oklahoma. (R-733-736).
 "At pages 628 through 655 of the record it is reflected that counsel for Primm moved for a continuance until such time as the absent witness, Beard, could appear in Court. This was denied. Counsel for Primm then moved to make a showing for the absent witness. The testimony of the absent witness was outlined in detail. The Court did not permit the showing to be made.
 "It was reversible error for the Court to deny the continuance and then deny Primm the right to make a showing for the absent witness. Stovall v. State, [46 Ala. App. 181,] 239 So.2d 323."
Appellant finds strong support in Stovall v. State, supra, for his contention that the trial court should have either granted defendant's motion for a continuance of the case on account of the unavailability for the trial of a particular witness or permitted a showing for the witness. However, the circumstances involved are much more complex than they were inStovall v. State, in which the motion for a continuance and the offer to make a showing for the absent witness were presented just before the trial of the case commenced. In the instant case, a motion for a continuance had been made before the trial of the case commenced, a lengthy motion that set forth a number of reasons for a continuance, including the probable unavailability of the witness Beard for the scheduled trial, and such motion for a continuance was denied, but it is not the denial of that motion for a continuance that constitutes the basis for the first issue presented by appellant. The basis for such issue consists of the ruling of the trial court at the conclusion of all the evidence in the case and after a colloquy among the trial judge and counsel for the parties covering approximately twenty-five pages of the transcript of the proceedings. Counsel for defendant then vigorously insisted that the case should be continued until the absent witness appeared in court or that he should be allowed to make a showing for the absent witness, that the State would agree that the witness if present and sworn would testify as stated in the affidavit of the defendant's attorney as to what the witness would testify. This was, that "about 5:10 or 5:25" on the afternoon of the alleged crime the defendant engaged in a calm and casual local telephone conversation with the witness. Such had been the substance of the testimony of defendant's father, who said defendant was then at his father's home.
All of the lengthy colloquy was out of the presence of the jury, and during the colloquy, the trial judge called as a witness his secretary, who testified that a call had been received from the absent witness asking to speak to the defendant's father. She testified:
"Q. That's Col Primm, Sr.?
 "A. Senior, yes, sir. I went out in the hall. I looked both ways but I didn't see anybody there. When I went back to the phone, I relayed the message to him that I had been given earlier. And the message was from Mr. Primm's sister. She had come up to my desk and asked me, or told me that they were expecting a call from Mr. Beard, a long distance call. Mr. Lowery [one of defendant's trial attorneys] was. And that Mr. Lowery had told her to tell me, or to tell Mr. Beard that, when he called, that they would not need him, to thank him for his efforts but by the time he got here it wouldn't be worth his while.
"Q. All right. Did Beard say when he could get here?
 "A. He said, well, now, I can be here at 5:30 this afternoon. And I said well, I guess, the trial wouldn't still be going or they wouldn't need you then."
Thereupon, defendant's attorney took the stand, was sworn as a witness, and testified in pertinent part as follows: *Page 550 
 "I am one of the Defense Attorneys representing Columbus Flether Primm. I have made a diligent effort to locate, by long distance telephone, this witness Beard. I called him last evening by long distance and he outlined that he had a class to instruct for the United States Army Reserves this morning at nine and would not be able to leave Fort Sill, Oklahoma, or Lawton, Oklahoma, until after that. That he understood, as he informed me, that he would have to take four hours to drive to Dallas, Texas, which was the nearest airport. That there was one airplane that left once a day from Lawton but that he was unable to catch it in time. That he would have to check his schedule and call me back and let me know when he would arrive. He never called me back, and apparently, the call received by the Court's secretary was the one. Later today I informed the defendant's sister, Mrs. Kitti Meeshad that due to the time element, it will be impractical and a great inconvenience on the witness and this court to ask him to come down. In my judgment it was futile, since this Court was insisting that we go on and complete the case today. And 5:35 would be after the court time. So I instructed Mrs. Meeshad to contact the witness Beard and tell him that it would be impractical for him to try to arrange it. One other thing, I do recall that the witness Beard said that he had to be back at Fort Sill, Oklahoma, tomorrow, which is Friday, for some command performance that he had to attend and I saw no way practicable for him to be able to make that."
Further colloquy continued for a short time, defendant's motion for a continuance was overruled, the defendant then rested, the jury was returned to the courtroom and arguments of counsel were commenced at 2:45 p.m.
We have set forth sufficient details as to the circumstances that disenabled defendant from obtaining either a showing for the absent witness or a continuance of the case until the absent witness appeared in court, which circumstances are so complex as to be readily distinguishable from and render inapposite what was held in Stovall v. State, supra, the only case relied upon by appellant, and applied to the situation existing in that case. It was not a prerogative of the trial court to permit the defense to make a showing for the witness. Whether the trial judge thought that counsel for the State was justified in declining to agree to a showing for the witness as proposed by defendant's counsel, we do not know, but even if counsel for the State was not justified in declining to agree to the proposed showing, such action is not chargeable to the trial court as error. A proper solution of the first issue presented by appellant turns on whether the trial court should have granted the defendant's motion to continue the trial, the remainder of the trial, to a time at which the absent witness could appear and testify. No one is in a better position than was the trial judge to determine whether such action should have been taken. In accordance with the established principle, whether defendant's motion for a continuance should have been granted was addressed to the sound discretion of the trial court and the exercise of its discretion will not be disturbed on appeal in the absence of a clear abuse thereof. Fletcher v.State, 291 Ala. 67, 277 So.2d 882 (1973); Canada v. State, Ala.Cr.App., 421 So.2d 140 (1982); Busby v. State, Ala.Cr.App.,412 So.2d 837 (1982). We find no abuse by the trial court of the discretion vested in it as to the motion.
Appellant's second contention for a reversal is that the trial court erred in admitting or in not excluding testimony of John Albert Phillips relative to a statement that defendant had made to Phillips that he was guilty of the crime for which he was being tried. Phillips was a fellow-inmate of defendant in the Houston County jail at the time of the statement; the defendant was in jail for a crime allegedly committed in Houston County. We now set forth the pertinent portion of the transcript as to the questions asked the witness by counsel for the State, the objections of defendant's counsel, and the answers of the witness: *Page 551 
"Q. Sir, since the time that you first met Mr. Primm, how frequent did you have to talk with him?
"A. About twice a day, really about two hours.
"Q. Now, do you know what charge Mr. Primm is on trial for?
"A. Yes, sir.
"Q. What charge is that, sir?
"A. Rape.
"Q. Rape?
"A. Yes, sir.
"Q. After you met Mr. Primm in the latter part of August, 1981, did you have an occasion to talk with him about the charge that he is on trial for here in Montgomery, Alabama, today?
"A. Yes, sir.
"Q. All right. Do you recall approximately, sir, when you first talked with him about the charge of rape in Montgomery, Alabama?
"A. Yes, sir.
"Q. When was that?
"A. That was around the first part of September.
"Q. 1981?
"A. 1981.
"Q. Specifically, sir, with respect to whether or not he did or did not commit the rape; did you all talk about that subject?
"A. Yes, sir.
"MR. LOWERY: Now, we object to that, Your Honor. He has not laid the proper foundation and also the question is leading.
"THE COURT: All right, the question was already answered, I believe before the objection.
"MR. LOWERY: We move to exclude the answer.
"THE COURT: Motion denied.
"MR. GILLIS: (Resuming.)
"Q. With respect to the question of who, if anyone, well, did Mr. Primm tell you whether or not he committed the rape he is on trial for in Montgomery?
"MR. LOWERY: We object on the ground that the question is leading. It's suggesting an answer to the witness. The question is not a direct examination question. It's on a crucial issue, Your Honor, and we ask the Court to consider it to be a leading question.
"THE COURT: All right. Counsel may rephrase.
"MR. GILLIS: (Resuming.)
"Q. With respect to the subject of rape that you all discussed, you and Mr. Primm, in connection with the charges that existed against him in Montgomery, Alabama, what, if anything, did he tell you concerning his activity with the person that is alleged to have been raped?
"MR. LOWERY: We object on the grounds of relevancy. On the grounds he has not established or laid a proper predicate according to law.
"THE COURT: Overruled.
"MR. LOWERY: Time, place, circumstances, anyone present.
"THE COURT: Objection overruled.
"MR. GILLIS: (Resuming.)
"Q. What, if anything, sir, did he tell you with respect to the charge of rape and the person who was raped?
"A. That he did it.
"MR. LOWERY: Just a minute, Counsellor. We move to exclude that answer, Your Honor.
"THE COURT: All right. The motion to exclude the answer is denied.
"MR. LOWERY: We move for a mistrial.
"THE COURT: Motion for a mistrial is denied.
"MR. GILLIS: (Resuming.)
"Q. Who told you that he did it?
"A. Primm.
"Q. Is this the same Primm that you identified here in court today?
"A. Yes, sir.
"Q. With respect to the charge that existed against Mr. Primm in Montgomery, Alabama, *Page 552 
did you have an occasion to discuss with him his going to trial?
"A. Yes.
"Q. On that charge?
"A. Yes, sir.
"Q. What, if anything, did he tell you in connection with your discussion about his going to trial?
"A. MR. LOWERY: We object on the ground that the question is leading, suggestive of an answer.
"THE COURT: Objection is overruled.
"MR. GILLIS: (Resuming.)
"Q. What did he tell you, sir?
"A. He said that he didn't think they could convict him.
"MR. LOWERY: We move to exclude the answer.
"THE COURT: Motion to exclude the answer is denied.
"MR. LOWERY: We move for a mistrial.
"THE COURT: Motion for a mistrial is denied.
"MR. GILLIS: (Resuming.)
"Q. He said that he did not think they could convict him?
"A. Yes, sir.
"Q. Did he tell you why he thought that?
"MR. LOWERY: We object. The witness is being called on to ask for a reasoning process of the Defendant on this occasion.
"THE COURT: Objection overruled.
"MR. GILLIS: (Resuming.)
"Q. Did Mr. Primm tell you why he thought he could not be convicted?
"A. They didn't have enough evidence.
"Q. Beg your pardon?
"A. Not enough evidence and difference in the time.
"Q. If you could, sir, would you repeat that up louder?
"A. They didn't have enough evidence and the difference in the time that he established to and from.
"Q. They didn't have enough evidence and —
"MR. LOWERY: We move to exclude the answer, Your Honor.
"THE COURT: All right, sir. Motion to exclude the answer is denied.
"MR. GILLIS: (Resuming.)
"Q. With respect to the time, did he elaborate in any manner as to what he meant by that?
"A. Would you —
"Q. You said that Mr. Primm stated that he could not be convicted because, not enough evidence and a difference in time.
"A. Right.
"Q. Did he go on to tell you what he meant by the difference in time?
"MR. LOWERY: We object to the question as being leading and suggestive.
"THE COURT: Objection is overruled.
"MR. GILLIS: (Resuming.)
"Q. Did he tell you, sir?
"A. The time that he was supposed to have left his job or wherever he was at until the time he got to it, he wouldn't have had enough time to have this appointment, this restaurant he was supposed to have lunch at.
"MR. LOWERY: We move to exclude the answer.
"THE COURT: Motion to exclude the answer is denied.
"MR. LOWERY: We move for a mistrial.
"THE COURT: Motion for a mistrial also denied."
State's counsel continued to ask the witness questions as shown by about two pages of the transcript, which show only two objections by defendant, one on the stated ground "of relevancy" and the other on the ground that the question was leading.
The core of appellant's argument as to the admissibility of the confession is in the following portion of his brief:
 "No rule of law is more clear than that which holds that confessions are prima *Page 553 
facie involuntary and there must be evidence addressed to the trial Judge rebutting this presumption. Taylor v. State, [249 Ala. 130] 30 So.2d 256. True, the cases say `unless the circumstances of the confession show it to be voluntary.' But what is meant by such words? We know that to comply with this firm and established rule of law simply by asking if any threats or promises were made will get the predicate under the wire. But in this Primm case we have absolutely nothing. We repeat, nothing, in the way of a predicate was laid to show the voluntariness of the confession by Primm to Phillips. The effect of this is to clearly put the Court in error. It is error because this case does not come within the rule where a discretionary ruling is sought to be reviewed. This is true because to invoke a discretionary ruling there would have to be some evidence presented to show the voluntary character of the confession. Then, whether or not such ruling on it by the trial Court was an abuse of discretion would be entitled to certain weight and presumptions. However, in this case the error of the trial Court was in not requiring some evidence in the form of a predicate that the confession was voluntary."
We agree with the premise contained in the quoted portion of appellant's argument, but we are not in accord with the conclusion that the trial court was in error "in not requiring some evidence in the form of a predicate that the confession was voluntary." It may be that such disagreement appears to be a mere logomachy. Even so, we are convinced that, in accordance with all authorities cited by the parties on the point, and other authorities that we have in mind, when an accused volunteers a confession to a person who is not a law enforcement official or agent and has no connection whatever with law enforcement authorities, who has no interest whatever in the prosecution of the accused, is not in a position to promise or give the accused anything to compensate for his confession or to harm him for not making a confession, and there was no occasion whatever on the part of the person to whom the confession was made to have threatened the defendant if he did not confess or to make him any promise if he did confess, the confession under such circumstances is voluntary and admissible in evidence. Ellis v. State, Ala.Cr.App.,338 So.2d 428, 432 (1976); Kircheis v. State, Ala.Cr.App.,323 So.2d 412 (1975), cert. denied, 295 Ala. 409, 323 So.2d 421. Judge McElroy states the principle in Gamble, McElroy's AlabamaEvidence, § 200.02 (4)(a)(1977):
 "In deciding whether voluntariness has occurred in the process of making a confession, the courts are permitted to look into the totality of the ambient facts. Under this procedure, a formal predicate is not an indispensable requirement for proving voluntariness. When the circumstances indicate that, according to the common probabilities of experience, the confession was not improperly induced, then no formal predicate is required. These circumstances are so many and so varied that we can only sketch them in the accompanying note to this subsection." (Footnote omitted.)
The final issue presented by appellant is whether "evidence of a collateral crime was properly admitted." In arguing that it was inadmissible in the instant case, appellant relies exclusively upon Hinton v. State, 280 Ala. 48, 189 So.2d 849
(1966), in which it was held that on the trial of a homicide case it was reversible error for the trial court to admit in evidence over the objection of the defendant testimony that defendant had committed the crime of burglary. In the instant case, the testimony under consideration was the testimony of a female witness that she had been raped by the defendant in the instant case, in an inn at Dothan, Alabama, around "4:30 in the afternoon" on April 7, 1980. In describing the incident, she said that she had been directed by the defendant to the location of her room. She testified:
 ". . . I had some reports that I had to turn in so I went back to my car to get the rest of my reports that had to be in by the tenth of the month. I was *Page 554 
walking back to my room and I saw him walking behind me but I supposed he had a room. I didn't know. He walked up behind me when I got the key in one door and he stuck a gun to my back and pushed me to the room.
"Q. Is this when he raped you, ma'am?
"A. Yes, it was."
The identity of defendant as the rapist was in issue in the instant case. The only evidence presented by defendant was to show by testimony as to an alibi that he was not the person who raped the alleged victim. What was held in Thomas v. State, Ala.Cr.App., 409 So.2d 955, cert. denied, Ala. (1982), in an opinion by Judge Bowen, now Presiding Judge, at 409 So.2d 957, is applicable and controlling in the instant case:
 "The rule is that the `identity exception to the general exclusionary rule only becomes applicable when the identity of the person who committed the now-charged crime is in issue.' McElroy, Section 69.01 (8) In Williams v. State, 350 So.2d 708 (Ala. 1977), the Supreme Court of Alabama held that where the accused offers no other defense beyond the plea of not guilty and the State's witness makes a positive identification based upon his observation of the accused at the scene of the first robbery, the identity of the accused is not in issue so as to justify the admission of evidence of a subsequent robbery. `Merely entering a plea of not guilty without presenting any witnesses, or an alibi, or other defense, did not place identity in issue.' Williams, 350 So.2d at 710.
 "However, efforts by the defendant on cross-examination of a witness to show mistake on the part of the witness in respect to the identity of the defendant places the defendant's identity in issue. Scott v. State, 150 Ala. 59, 43 So. 181 (1907), involved a prosecution for an unlawful sale of liquor made to Bossie McCondichie. At trial Mr. McCondichie positively identified the defendant. On cross-examination, the defendant sought to show that he was mistaken as to the defendant being the man who sold the whiskey to him. . . ."
The testimony of the witness as to the other rape was admissible.
No issue presented by appellant discloses any error committed by the trial court. We observe no obvious error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
BOWEN, P.J., and TYSON and HARRIS, JJ., concur.
TAYLOR, J., recuses himself.