The indictment in this case against Verlie David Barton contained four counts. The first count of the indictment charged this appellant, his brother Wallace Barton, and his nephew Manson Hicks with the first degree assault on the appellant's ex-wife, Valda Barton. The second count charged the appellant, Wallace Barton and Manson Hicks with the first degree assault on Karl Taylor. The third count charged the appellant, Wallace Barton and Manson Hicks with the first degree assault on Walter Ray Howard. The fourth count of the indictment charged the appellant with the attempted murder of Valda Barton.
All of the cases against the appellant, Wallace Barton and Manson Hicks were tried together. The appellant was found guilty of the first degree assault of Valda Barton. Wallace Barton and Manson Hicks were found not guilty on this count of the indictment. The appellant was found guilty of the first degree assault of Karl Taylor. Wallace Barton and Manson Hicks *Page 945 
were found guilty of the lesser included offense of second degree assault on this count of the indictment. The appellant, Wallace Barton and Manson Hicks were found guilty of the second degree assault on Walter Ray Howard. The jury found the appellant not guilty of the attempted murder of Valda Barton.
The appellant received a sentence of ten years' imprisonment in each of the two first degree assault convictions and a sentence of one year and one day imprisonment in the second degree assault convictions. He now appeals to this court.
Valda Barton testified that she and the appellant were married in September of 1976 and divorced in January of 1983. During their marriage, they acquired ownership of a house on Highway 5 in Natural Bridge, Alabama. The divorce decree provided that the appellant would live in the house until it was sold. The decree specified Valda Barton would get certain items of furniture from the house.
Immediately after the divorce Valda Barton was unable to take possession of her furniture. In April of 1983, Valda Barton contacted the appellant about her belongings and told him she would pick them up on one of two days. The appellant told her he would be home on both days in question.
Valda Barton then rented a U-Haul truck and hired two boys to help her move her furniture. When the three arrived at the house, the appellant was not there. Valda Barton let herself in the house with her key and attempted to locate the appellant by calling his mother and his sister. She also called the Winston County, Alabama Sheriff's Department and told them she was picking up her furniture.
As the boys and Valda Barton were moving her furniture, the appellant drove up and came inside with a rifle. He started beating the boys, and Valda Barton tried to call the police. The appellant jerked the phone out of her hand, knocked her down and kicked her down the stairs. He told her she was not "taking nothing" from the house. (R. 50)
The appellant then went outside and shot the tires on the U-Haul truck and shot through the windshield of the truck. He also shot one of the tires on Valda Barton's car.
Valda Barton then ran to a neighbor's house, and as she was running, the appellant shot at her. When she returned to the house, the police were there. The appellant told the police that Valda Barton had broken into the house and was taking things that did not belong to her. Valda Barton then hit the appellant and he hit her back. She told him she ought to kill him. Shortly, Valda Barton left.
A few days later, she drove by the house and saw what she thought was her furniture sitting outside the house covered by a sheet. She called the appellant and asked him to move the furniture into the garage because it was raining. The appellant told her she would have to move it herself. Valda Barton said she couldn't do it by herself and the appellant told her it was her problem.
Valda Barton then drove to Haleyville, Alabama, and got Karl Taylor and Walter Ray Howard to help her. When they got to the appellant's house, they started walking towards the front door. The appellant opened the garage door and he had a rifle in his hand. He said he knew she was coming and he had been waiting for her. The appellant threatened to shoot if they ran. He then forced the three, at gunpoint, into the den of the house and ordered them to sit on the sofa.
The appellant began screaming and yelling. The boys told him why they were there and asked him to call the police. He then hit Taylor and Howard numerous times in the chest and on the knees with the rifle. The appellant told Valda Barton to remove her rings. He threatened to shoot off her finger if she didn't give them to him. He told her he ought to kill her. He then hit her on the head with the rifle and cut her head open, causing it to bleed profusely.
The appellant called his brother, Wallace Barton, and said he needed help. A short *Page 946 
while later, Wallace Barton came to the house. Wallace Barton began kicking Howard. The appellant and his brother then beat the two boys. Wallace Barton banged Taylor's head against the fire place and Taylor was hit in the eye with the butt of the gun by the appellant.
After a time had passed, the appellant ordered the three outside. When they got outside, the appellant's sister, Lillian Hicks, and his nephew, Manson Hicks, were there. Valda Barton and the two boys started to run. The appellant shot at Valda Barton and then grabbed her and stripped off her blouse. Wallace Barton ran after Howard and began beating him. Hicks caught Taylor and started beating him. The appellant then dragged Valda Barton to the covered up area. He lifted up the sheets and there was nothing there but some junk. The appellant started laughing and said he had "fixed" her. (R. 70). Howard and Taylor finally got free and started to run. Howard ran towards a bluff. As Taylor was running to the highway, the appellant shot at him. The appellant then took Valda Barton to her car and told her that, if she came back, she wouldn't live to walk away.
Valda Barton then drove to the Haleyville Police Department. Once there, she was unable to get out of the car because of the injuries she had sustained. She lay on the horn and some officers came out. She told them to go help Taylor and Howard. An ambulance was called and Valda Barton received 11 stitches in her head. She was bedridden for one week.
The police found Taylor walking down the highway a while after Valda Barton arrived at the police department. He was taken to the emergency room where he received nine stitches to his eyebrow. The injury caused nerve damage to his eye and he still has problems with the eye.
Howard did not testify at the trial. The State rested its case at this point.
The first defense witness was Van Wallace, a deputy sheriff with the Winston County Sheriff's Office. He testified that he went to the appellant's house on the first night in question. When he arrived, the appellant was outside holding the gun. Valda Barton was standing by her car. One of her tires was flat. The two boys were standing beside the U-Haul truck. All of its tires were flat and the windshield had been shot. At some point, Wallace heard Valda Barton threaten to kill the appellant.
Dwight Durham, another police officer, was also at the appellant's house on the night of the first incident. He testified that Valda Barton and the appellant were arguing. She hit him and he hit her back. The appellant told him that Valda Barton and the two boys were trying to break in his house to get his furniture. Durham saw a broken window pane in the garage door.
Lillian Hicks testified that she, her sister, Frances McGough, and her son, Manson Hicks, went to the appellant's house on the night in question. When she arrived, she saw Valda Barton getting in her car and a man running towards the bluff. Manson Hicks ran after the man. The appellant told her to call the police and she left. Lillian Hicks testified that she didn't see Manson Hicks hit anybody, she didn't see the appellant with a gun and didn't see Wallace Barton at all. Frances McGough's testimony was similar to Lillian Hicks' testimony.
Manson Hicks testified that he ran after the man who ran towards the bluff but did not catch him. He stated that neither he nor Wallace Barton nor the appellant hit anybody. No shots were fired and the appellant didn't have a gun. The appellant told him that "they" broke in again.
Wallace Barton testified the appellant called his wife on the second night in question and told her to tell him to come to the appellant's house. When he arrived, he saw Valda Barton's car. When he went inside, he saw the boys grabbing at the appellant like they were fighting with him. Wallace Barton grabbed one of the boys and wrestled with him. The boy got away and he ran after him but never found him. *Page 947 
He heard Valda Barton threaten to kill the appellant.
Wallace Barton admitted the appellant had a gun on the night in question but said Manson Hicks didn't do anything.
The appellant testified that, on the day of the first incident, he came home and saw two men moving furniture out of his house. He got out of his truck with his rifle and the two men started to leave in the U-Haul truck. The appellant shot the tires on the truck to prevent the men from leaving until the police arrived. He asked the men what they were doing and they told him Valda Barton hired them to move some furniture. The appellant saw some of his furniture in the truck and told them to unload it.
The appellant stated Valda Barton didn't have keys to the house because he had the locks changed. There were broken windows in the garage and utility door.
After the police arrived, Valda Barton hit the appellant and he slapped her back. She told him she would kill him and would be back.
On the day of the second incident, the appellant was in bed when he heard a car stop outside. He came downstairs with his rifle and went in the garage. Once inside the garage, the appellant stated the garage door opened. Two boys and Valda Barton were standing there. He pointed the gun at them and asked what they were doing. The boys started fighting with him and said they had come to kill him.
The appellant managed to get the three into the house. He tried to call the police but couldn't get through. He called his brother to come help him.
At some point, the boys and Valda Barton tried to jump him. He hit them and told them to sit down. When Wallace Barton got there, the appellant told him they had broken in again.
 I (a)
The appellant challenges the sufficiency of the evidence on the grounds that the State failed to prove that Valda Barton and Taylor suffered a "serious physical injury" and that Howard suffered a "physical injury."
"Serious physical injury" is defined as "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of any bodily function." Ala. Code, § 13A-1-2 (9) (1975).
"Physical injury" is defined as "[i]mpairment of physical condition or substantial pain." Ala. Code, § 13A-1-2 (8) (1975).
Nelson v. State, 462 So.2d 962 (Ala.Crim.App. 1984) presents a similar factual situation in regard to the injuries sustained by Valda Barton and Taylor. In Nelson, the victim testified that the defendant hit her on the forehead with the butt of his gun and she began "bleeding like a stuck pig." Nelson, supra, at 963.
In Nelson, Judge Bowen, speaking for this court, stated that "there was absolutely no evidence that any injury [the victim] sustained created a substantial risk of death or caused serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." Nelson, supra at 963.
However, in his opinion, Judge Bowen specifically noted that the victim went to the doctor on the morning after the assault and no stitches were required for her wound.
In the present case, though, both Valda Barton's and Taylor's wounds required numerous stitches. The police believed their wounds to be serious enough to call an ambulance for Valda Barton and to take Taylor immediately to the emergency room after they found him. Both Valda Barton's and Taylor's wounds left scars.
Valda Barton testified she was bedridden for one week after she received the injury to her head. She did not stay in the hospital because she could not afford it.
Taylor testified he had trouble with his eyes after he received the injury to his eyebrow. He also had headaches for a while after he sustained his injury. *Page 948 
These facts are sufficient evidence that both Valda Barton and Taylor received serious physical injuries as a result of the assault by this appellant.
As to the evidence of "physical injury" to Howard, both Valda Barton and Taylor testified that the appellant hit Howard on the knees and in the chest with his gun. When the appellant would hit Howard, he would bend "over double." On one occasion when the appellant hit Howard on the knee, his knee began to bleed.
This evidence of the injuries sustained by Howard can also be compared to those received by the victim in Nelson, supra. In holding that the injuries received by the victim did not rise to the level of a serious physical injury (thus requiring the reversal of the defendant's conviction for assault in the first degree), this court found, in effect, that the victim did receive "physical injury" and thus, remanded the case to the trial court with directions that the defendant be adjudged guilty of assault in the second degree.
Thus, the evidence that Howard was repeatedly beaten in the chest and on the knees and, as a result of the beating, his knees bled, was sufficient evidence of "physical injury."
We find there was sufficient evidence presented at trial to sustain the appellant's convictions here at issue.
 I (b)
Also the appellant contends the trial judge erred by failing to define to the jury the terms "serious physical injury" and "physical injury."
The appellant did not submit any written requested charges covering these definitions and made no exception to the court's oral charge. Thus, he has failed to preserve this issue for our review. Tuck v. State, 384 So.2d 1240 (Ala.Crim.App. 1980);Tice v. State, 460 So.2d 273 (Ala.Crim.App.), cert. denied460 So.2d 272 (Ala. 1984). Allen v. State, 414 So.2d 989
(Ala.Crim.App. 1981), affirmed, 414 So.2d 993 (Ala. 1982).
 II
After the opening statements in this case, defense counsel informed the court that one of the defense witnesses, Officer Dennis Bales, was not present for trial. Defense counsel told the trial court that Bales was a material witness and that he had testified at the preliminary hearing in this case. He stated he expected Bales to testify to the fact that, on the night of the first incident, he saw Valda Barton hit the appellant and the appellant hit her back. Bales was also expected to testify that he heard Valda Barton threaten to come back and kill the appellant.
Defense counsel then requested the court to use its power to secure Bales's presence at the trial, or in the alternative, to grant a continuance until Bales could be found and brought to testify.
The court then granted the motion to use its powers to secure Bales's attendance at trial but denied the motion for continuance.
Defense counsel then asked the court to allow Bales's testimony at the preliminary hearing to be admitted into evidence in the event Bales did not appear at trial. The trial court reserved a ruling on this motion until the next day in case Bales did appear ready to testify on that day.
The State then presented its case and rested. At the close of the State's case, court was recessed for the day.
The next morning, the defense began to present its case. After four witnesses had testified on the appellant's behalf, defense counsel again brought up the fact that Bales was not present in the courtroom to testify. He asked the trial court that he be allowed to make a showing to the jury as to Bales's testimony at the preliminary hearing. The trial judge denied this motion on the grounds that Bales's testimony was cumulative of other testimony already heard at trial.
The appellant contends the trial court erred by failing to grant a continuance due to Bales's absence at trial.
 "The constitutional right of the accused to have compulsory process to obtain *Page 949 
witnesses in his defense is well established. See, e.g., Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); United States v. Melchor Moreno, 536 F.2d 1042 (5th Cir. 1976). Holding this Sixth Amendment right to be applicable in state proceedings, the Supreme Court in Washington
noted:
 The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . . This right is a fundamental element of due process of law.
388 U.S. at 19, 87 S.Ct. at 1923.
 "Not every denial of a motion for continuance to obtain witnesses violates the accused's right to compulsory process. See, e.g., McKinney v. Wainwright, 488 F.2d 28 (5th Cir.), cert. denied, 416 U.S. 973, 94 S.Ct. 1998, 40 L.Ed.2d 562 (1974). A court may not, however, refuse to grant a reasonable continuance for the purpose of obtaining defense witnesses where it has been shown that the desired testimony would be relevant and material to the defense. Hicks v. Wainwright, 633 F.2d 1146 (5th Cir. 1981); Singleton v. Lefkowitz, 583 F.2d 618 (2d Cir. 1978). In Hicks this Court recently enunciated several factors which are to be considered in determining whether an accused was deprived of his right to compulsory process by a denial of a motion for continuance:
 [T]he diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.
 633 F.2d at 1149 (quoting United States v. Uptain, 531 F.2d 1281, 1287 (5th Cir. 1976) (footnotes omitted))."
Dickerson v. Alabama, 667 F.2d 1364, 1369-70 (11th Cir. 1982) (footnote omitted). See also Dale v. State, 466 So.2d 196
(Ala.Crim.App. 1985); Firth v. State, 493 So.2d 397
(Ala.Crim.App. 1986).
The record in this case indicates that defense counsel did exercise due diligence in attempting to procure Bales's presence at trial. Subpoenas were issued and executed on Bales. When Bales failed to appear at trial, defense counsel informed the trial court of this fact and requested to use its powers to secure Bales's attendance.
Although the trial court granted this motion, the record does not show whether a writ of attachment for Bales was issued or what other, if any, actions were taken by the trial court to procure Bales's presence at trial. Thus, Bales's absence cannot be attributed to any lack of diligence on the part of defense counsel.
The probability of procuring Bales's testimony within a reasonable time is not clearly ascertainable from the record. It was noted in the record that Bales, at the time of the trial, was working for Mays Flowers and ". . . they go over the United States selling flowers." (R. 33). Due to the particular facts of this case, we must give the appellant the benefit of the doubt that Bales's attendance could have been secured within a reasonable length of time. The court was informed where Bales was employed and there was no showing by the State that an attempt to locate Bales at his place of employment was made on the results of such an attempt.
Defense counsel made a specific showing as to what he expected Bales's testimony to be. Bales's expected testimony that he saw Valda Barton hit the appellant and threaten to kill him was, indeed, favorable to the appellant.
However, our consideration of the last factor enumerated inDickerson, supra, leads us to the conclusion that the appellant was not deprived of his right to compulsory process due to the trial court's failure to grant a continuance because of Bales's absence at trial.
Bales's expected testimony was not unique and was cumulative of other testimony *Page 950 
already presented at trial. In Dickerson, supra, the Eleventh Circuit held that the testimony of an absent witness, a police officer, "could not be considered cumulative of similar testimony by Dickerson's relatives and friends" because "testimony by a police officer would have lent a new aura of credibility to Dickerson's alibi defense." Dickerson, supra, at 1370.
In the case at bar, although Bales was a police officer at the time of the incident to which he would testify, his testimony would definitely be cumulative of other testimony at trial. Two other police officers testified at the appellant's trial about the substance of Bales's expected testimony. One officer testified he saw Valda Barton hit the appellant and the appellant hit her back on the first night in question. The other officer testified that he heard Valda Barton threaten to kill the appellant. Thus, these officers' testimony at trial lent an "aura of credibility" to the appellant's defense, and bolstered same. Bales's testimony would not have added any more credibility to the appellant's defense and would have been merely cumulative of these other officers' testimony. Primm v.State, 473 So.2d 547 (Ala.Crim.App. 1984), cert. quashed,473 So.2d 547 (Ala. 1985).
Not only would Bales's testimony be cumulative of the other officers' testimonies, but the victim, Valda Barton, herself, testified that she hit the appellant and also threatened to kill him.
Thus, we find no basis of reversible error which occurred here by the trial court's denial of defense counsel's motion for a continuance. Dale, supra; Firth, supra.
 III
The appellant contends he was denied his Sixth Amendment right to confrontation because one of the victims, Walter Ray Howard, did not testify at trial.
The Sixth Amendment to the United States Constitution guarantees that the accused shall have the right "to be confronted with the witnesses against him." This right of confrontation is applicable and obligatory upon the states under the Fourteenth Amendment to the United States Constitution. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065,13 L.Ed.2d 923 (1965); Douglas v. Alabama, 380 U.S. 415,85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).
The confrontation clause does not guarantee that the State will call all the witnesses it has against the accused nor does it require the State to call any particular witnesses. UnitedStates v. Morgan, 757 F.2d 1074 (10th Cir. 1985); United Statesv. Polisi, 416 F.2d 573 (1969).
"[I]t is now well settled that the confrontation clause does not come into play where a potential witness neither testifies nor provides evidence at trial." Turnbough v. Wyrick,420 F. Supp. 588 (E.D.Mo. 1976), affirmed 551 F.2d 202 (1977), cert. denied, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977) (court held defendant not denied his right to confrontation when State failed to call the victim to testify). See alsoWhite v. State, 647 S.W.2d 71 (Tex.App. 1983) (defendant not denied right to confrontation when complainant did not appear or testify at trial and none of his previous testimony, if it had been recorded, was introduced by the State); Pearson v.State, 455 So.2d 963 (Ala.Crim.App.), cert. denied,455 So.2d 963 (Ala. 1984) (defendant not denied right to confrontation when arresting officer was not called to testify).
Howard did not appear or testify at the appellant's trial. No evidence of any previous statements made by Howard was introduced at the trial.
Thus, the appellant was not denied his Sixth Amendment right to confrontation in this case.
 IV
In the appellant's motion for new trial, he alleged that he was denied a fair trial because one of the jurors, David Stokes, had a fixed opinion as to the guilt of the appellant, prior to trial. A hearing was held on said motion.
At the hearing it was stipulated that the trial court asked the jurors if anyone had a *Page 951 
fixed opinion as to the guilt or innocence of the appellant and his co-defendants, and no one responded. (The record reflects that the trial judge did ask if anyone had a fixed opinion as to guilt or innocence and received no response to the question.) (See R. 4).
Robert Wayne Bass testified at the hearing that he is the Mayor of Lynn, Alabama and David Stokes is a member of Lynn's Town Council. He stated that a discussion came up one night after a council meeting concerning the appellant's trial. In the course of that discussion, Stokes said "he didn't know why they let him sit on the jury they were guilty anyhow." (R. 389). Bass stated he couldn't understand how Stokes was able to sit on the jury because there was "bad blood" between the Barton and Stokes families.
In response to questions from the court, Bass testified he had come to see the trial court on two occasions concerning this case. Bass admitted he told the trial court that the appellant and his co-defendants had been taught to take the law into their own hands and that they didn't deserve any punishment. Bass stated he would have done the same thing under the circumstances. He also told the trial court that he would suffer tremendous financial repercussions if the appellant and his co-defendants were punished.
David Stokes testified that he was a member of the jury in the trial of this case. He said that, when he was asked during voir dire whether he knew any of the appellant's family, he replied that he did. He stated during voir dire that he told the trial court he could make a decision based on the evidence even though he knew some of the appellant's family members.
Stokes testified that, after one of the council meetings, he asked if anyone had heard about the sentence in this case. He said the only other statement he made was "I don't know why they put me on the jury because I have always been believed that anybody that knowed anybody would not have to sit on the jury for anybody." (R. 400)
Stokes further testified that he was not prejudiced against the appellant before or after the trial and he rendered his verdict based on the facts he heard at trial.
After hearing all the evidence on the motion for new trial, the trial court denied the motion.
The appellant now contends the trial court erred by denying his motion for new trial.
A motion for new trial rests within the sound discretion of the trial court. Perry v. State, 453 So.2d 762 (Ala.Crim.App.), cert. denied, 453 So.2d 762 (Ala. 1984). When testimony during a hearing on a motion for new trial is in conflict, such as is the case here, the trial judge is in the best position to assess the credibility of the testimony and make any decision thereon. Perry, supra; Terry v. State, 424 So.2d 652
(Ala.Crim.App. 1982), cert. denied, 424 So.2d 653 (Ala. 1983).
Our review of the evidence presented at the hearing on the motion for new trial convinces us that the trial judge did not abuse his discretion in this instance. The motion for new trial was properly denied.
 V
During the direct examination of Valda Barton, the following occurred:
"Q. Was this the first time David had beat up on you?
"A. No, sir.
 "MR. TWEEDY: I object to that. No bearing on the issues in the case.
 "MR. TIDWELL: Your Honor, I think we are entitled to go into past episodes of violence.
"THE COURT: Overruled.
"MR. TWEEDY: We except.
"Q. How many times has he beat on you?
"MR. TWEEDY: Same objection, same grounds.
"Not shown when, too remote.
"A. Many times." (R. 53)
The appellant contends the trial court erred by allowing Valda Barton to testify *Page 952 
about these past acts of violence committed by the appellant.
 "The general rule is that evidence of other crimes not charged in the indictment is inadmissible if its only purpose is to show the bad character, inclination or propensity of the accused to commit the type of crime for which he is being prosecuted. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947). On the other hand, if the defendant's collateral misconduct is relevant and tends to show his commission of the current offense other than by suggesting that he is more likely to be guilty because of his past misdeeds, then the evidence is admissible. C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977).
 "Many Alabama cases have adopted the following exceptions to the general rule, or tests for relevancy, to determine whether evidence of uncharged crimes is admissible:
 "`(1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes.'
 E.g., State v. Bobo, 56 Ala. App. 622, 626, 324 So.2d 336 (1975) (quoting Wharton's Criminal Evidence § 31)."
Brewer v. State, 440 So.2d 1155, 1159 (Ala.Crim.App.), cert. denied, 440 So.2d 1155 (Ala. 1983).
Valda Barton's testimony concerning the previous assaults against her by the appellant was admissible for the purpose of showing intent and motive. Burkett v. State, 439 So.2d 737
(Ala.Crim.App.), cert. denied, 439 So.2d 737 (Ala. 1983);Partridge v. State, 431 So.2d 1377 (Ala.Crim.App. 1983). See also C. Gamble, McElroy's Alabama Evidence, § 45.06 (1) (3d ed. 1977).
"When evidence of a former difficulty between a defendant and the assaulted party is offered by the State, it is for the purpose of shedding light on the true conduct of the defendant at the time of the subsequent difficulty for which the accused is on trial. Gray v. State, 63 Ala. 66; McAnally v. State,74 Ala. 9." Thigpen v. State, 50 Ala. App. 176, 277 So.2d 922, 924
(1973) (quoting Spain v. State, 37 Ala. App. 311, 68 So.2d 53, cert. denied, 259 Ala. 606, 68 So.2d 58 (1953)).
Thus, Valda Barton's testimony about the former beatings was not offered solely for the purpose of showing the appellant's bad character since it was admissible under the intent and motive exceptions to the general rule which prohibits evidence of collateral acts. Burkett, supra.
The remoteness of these previous beatings affects the weight, not the admissibility, of Valda Barton's testimony. Partridge, supra.
Thus, no error occurred here. For the reasons shown, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.