UNITED STATES of America, Plaintiff-Appellee,

v.

Wallace L. "Jackie" CHARACTER, Defendant-Appellant.

No. 77-5055.

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1978.

---

Marion F. Walker, Birmingham, Ala., for defendant-appellant.

J. R. Brooks, U. S. Atty., Ann Robertson, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT, HILL and FAY, Circuit Judges.

FAY, Circuit Judge:

This appeal requires our assessment of the validity of a search under a warrant predicated upon an affidavit containing negligent misrepresentations of facts. The trial court's denial of a motion to suppress evidence resulting from the search was followed by a conviction of the defendant, Wallace L. Character, for knowingly receiving firearms in violation of 18 U.S.C. § 922(h), and knowingly engaging in the business of dealing in firearms without being licensed in violation of 18 U.S.C. §§ 922(a)(1) and 924(a). We hold that probable cause to issue the search warrant was not present absent the misrepresentations in the affidavit supporting that warrant. As a result, the evidence obtained pursuant to the warrant based on that affidavit should have been suppressed.

The events leading to the arrest and conviction of the defendant are not seriously disputed by either party. On the night of January 25, 1976, at about 10:30 P.M., a deputy Allen Reese and an officer Max Kirby, of the Calhoun County, Alabama, Sheriff's Department were dispatched to meet a man at a telephone booth in Anniston, Alabama. Thereafter, a conversation between Reese, Kirby, and the unidentified informant took place in the patrol car. The informant furnished information to the effect that there was supposed to be some stolen merchandise in a trailer owned by the defendant. When questioned as to how he knew the merchandise was stolen, the informant said that he had heard the defendant and others talking about it. The officers then instructed the informant to keep his hands visible because they discovered he had a gun. The informant responded to this by saying that he could be trusted because "I want to get even." The informant admitted he had been drinking heavily that evening.

After speaking with the informant, Deputy Reese contacted a Detective Bobby

Austin, and the two of them went to Oxford City Hall where Austin picked up some blank search warrant forms. Then, between 12:30 and 2:30 in the morning, Deputy Reese and Detective Austin went to the residence of Sam Monk, who was the Recorder of the City of Oxford. Deputy Reese was placed under oath, testified, and signed an affidavit. A search warrant was then issued by the magistrate and was immediately executed by a Sergeant Owens of the Oxford Police Department. During the course of the search, a list of items were seized including several firearms. The defendant was arrested, but state charges were later dropped because none of the items seized were found to be stolen. The case was then turned over to the federal authorities, and the defendant was eventually indicted and convicted.

The underlying affidavit signed by Deputy Reese is the basis for this appeal. The affidavit provided in pertinent part that:

A reliable informant who has supplied me with reliable information in the past which has lead [sic] to arrests which have been sustained by convictions, told me that within the past 24 hours he has personally observed certain stolen personal property inside the house and store building located at Route 2, Box 21, Oxford, Alabama. . . . He stated that he knows of his own personal knowledge that the personal property is stolen. . .

The magistrate who issued the warrant testified that the contents of the affidavit accurately summarized the testimony given to him by Deputy Reese. The magistrate gave the following rendition of the events of the evening in question:

Mr. Reese came by my house. He informed me that he had basically a reliable informant and that this informant had proved to be reliable in the past and he had given information that had led to arrests that had been sustained by convictions. That this informant had told him that within the preceding twenty-four hours that he had seen certain items of personal property located at the trailer and I believe in some of the cars sur-rounding the residence of Mr. Jackie Character near the Goldwater community and that this personal property was in this area and he knew of his own personal knowledge this property was stolen and I believe he related to me that the informant had told him there were some chain saws and several other items of personal property and I believe they are enumerated in the warrant. I don't recall independently.

The problem with the affidavit, and the testimony given by Deputy Reese to the magistrate, is that they contain falsehoods. Deputy Reese was not in a position to characterize the informant as "reliable" since he had only "seen" the informant on two prior occasions, and the informant had never before supplied the deputy with any information, much less information that has "led to arrests which have been sustained by convictions."

█ The test for measuring the sufficiency of an affidavit which is based largely on hearsay statements and is offered in support of the issuance of a search warrant is well established. First, the affidavit must present sufficient objective evidence to enable the magistrate to conclude that the unnamed informant is reliable. The second prerequisite is that the affidavit must set forth some underlying circumstances which reveal the source of the informer's information pertaining to the criminal activity. See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The manner in which this Circuit deals with misrepresentations set forth in this type of affidavit is also well established. In United States v. Thomas, 489 F.2d 664 (5th Cir. 1973), cert. denied 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975), this court set forth the test by stating:

[A]ffidavits containing misrepresentations are invalid if the error (1) was committed with an intent to deceive the magistrate, whether or not the error is material to the showing of probable cause; or (2) made non-intentionally but the erroneous statement is material to the establishment of probable cause for the search.

*Id.* at 669. *See also United States v. Park,* 531 F.2d 754 (5th Cir. 1976); *United States v. Hunt,* 496 F.2d 888 (5th Cir. 1974).

Our inquiry is simplified by the fact that the government concedes that there is no basis in fact for Deputy Reese's statements concerning the informant's reliability. While we are shocked by the Deputy's unprofessional conduct in this matter, we nevertheless feel compelled, because of our limited scope of review, to accept the trial judge's finding that these misrepresentations were not intentional, but were rather innocent mistakes made in "good faith". By accepting this finding, we make unnecessary our own inquiry into the Deputy's motivations, and thus can limit our review to the question of whether the negligent misrepresentations were *material* to the establishment of probable cause for the search.

The materiality of the misrepresentations cannot be disputed, because the affidavit, devoid of these statements, could not support the issuance of a warrant under the aforementioned *Aguilar-Spinelli* test. Absent the misrepresentations, there is absolutely nothing in the affidavit to satisfy the requirement that sufficient objective evidence be presented to enable the magistrate to conclude that the unnamed informant is credible or that his information is reliable. The government argues that it should not be restricted to the four corners of the affidavit, and asks us to determine the propriety of the issuance of this warrant by taking into account the sworn oral testimony presented to the magistrate which they contend would satisfy the *Aguilar-Spinelli* requirements. While we agree that they are not necessarily restricted to the four corners of the affidavit, *see United States v. Hill,* 500 F.2d 315 (5th Cir. 1974), we do not think that this in any way helps their cause. The magistrate's memory of these events was vague, and he was unable to relate with any certainty any testimony by Deputy Reese that would tend to establish the informant's credibility.[1] Therefore, absent the showing of the informant's credibility, the affidavit failed to satisfy the first prong of the *Aguilar-Spinelli* two prong test, and the issuance of the search warrant was improper. While our inquiry need go no farther, we feel that it is worthy to comment on the fact that the affidavit also fails to satisfy the second prong of the *Aguilar-Spinelli* test. Nowhere in the affidavit are sufficient underlying facts presented to inform the magistrate as to how the informant knew that the property was stolen. The mere conclusionary statement that an informant has seen stolen property at a certain address is insufficient to establish probable cause for the issuance of a search warrant.

We hold, therefore, that the affidavit under review was inadequate to establish probable cause for the issuance of a search warrant. Consequently, the evidence obtained pursuant to that warrant should have been suppressed. Since that evidence was crucial to the case against the defendant, the judgment of conviction is reversed.

REVERSED.

---

1. The record shows a doubted recollection of some possible conversation regarding a future drug transaction by others not involved here. There is also a reference to Monk's knowledge of Character's reputation in the community as a fence. Neither of these could possibly justify the issuance of the contested warrant.