[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 198 
Thomas Angelo Dale was indicted for possession of controlled substances in violation of the Alabama Uniform Controlled Substances Act. The jury found the appellant "guilty as charged in the indictment," and he was sentenced to eight years' imprisonment in the penitentiary.
 I
The appellant asserts his motion to suppress should have been granted because Officer Lance Monley lacked probable cause to seize, search, and arrest the appellant.
At the suppression hearing, Officer Lance Monley, an investigator with the Baldwin County Sheriff's Department, testified that on the afternoon of January 3, 1983, he met with a confidential informant concerning the possession of contraband by the appellant. After the initial meeting with Monley, the confidential informant went to the residence of the appellant's girlfriend. When the informant met with Monley the second time, he told Monley that he had seen the appellant in possession of "angel dust" and "marijuana," and that the appellant would be making a delivery of the drugs later that afternoon. The informant stated that the appellant would be leaving from his girlfriend's residence traveling in one of two vehicles, which he described, and would be going to Mamie Jackson's Place in Daphne to make the delivery.
At approximately 6:00 p.m., Monley saw the appellant in one of the vehicles which the informant had described, and he was heading in the direction of Mamie Jackson's Place. While the appellant was stopped in traffic at a red light, Monley stopped him. In the process of patting down the appellant, Monley observed a bulge in the appellant's left jacket pocket. In the jacket pocket, Monley found a pill bottle containing some pills, and four aluminum packets. The packets were later determined to contain phencyclodine or "angel dust." The appellant was then placed under arrest and transported to the Sheriff's Department.
Monley then returned to pick up the vehicle which the appellant had been driving. While he was driving the vehicle to the Sheriff's Department, Monley noticed "roach butts" and "marijuana residue" in the vehicle's open ashtray.
Monley further testified that he had used this informant several times in the past and that the appellant was suspected of being a drug dealer.
The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches and seizures are per se unreasonable unless one of the following seven circumstances is found to exist:
 "(1) In `plain view,' see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971);
 "(2) With `consent' voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);
 "(3) As `incident to a lawful arrest,' see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
 "(4) In `hot pursuit' or `emergency' situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); State v. Sutton, (Mo. 1970) 454 S.W.2d 481;
 "(5) Where `exigent circumstances' exist coincidental with `probable cause' (as *Page 199 
in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and
 "(6) In `stop and frisk' situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968).
 "(7) Inventory searches, see South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)."
Daniels v. State, 290 Ala. 216, 276 So.2d 441 (1973).
The two relevant circumstances to this case are plain view (i.e., the marijuana found in the ashtray) and probable cause with exigent circumstances (i.e., the "angel dust" found in the pill bottle).
The appellant argues that the tip received by Monley from his "confidential informant" did not satisfy the analysis set out by the United States Supreme Court in Aguilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v.United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
(1969), and, therefore, Monley did not have probable cause to stop, seize and search him.
However, in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the "two pronged test" established in Aguilar, supra, and Spinelli, supra, and readopted the traditional "totality of circumstances" approach to probable cause. See also Sawyer v.State, 456 So.2d 114 (Ala.Cr.App. 1984); Walker v. State,462 So.2d 794 (Ala.Cr.App. 1984).
 "`In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"
 "Id. [Brinegar v. United States, 338 U.S. 160] at 175, 69 S.Ct. [1302] at 1310 [93 L.Ed. 1879]. Our observation in United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding `particularized suspicion,' is also applicable to the probable cause standard:
 "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
 "As these comments illustrate, probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), `Informants' tips, like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability.' Rigid legal rules are ill-suited to an area of such diversity. `One simple rule will not cover every situation.' Ibid." Illinois v. Gates, supra, 103 S.Ct. 2328-2329. (Footnote omitted.)
The Supreme Court in Illinois v. Gates, supra, did not hold that the two prongs of Aguilar, supra (the informant's "veracity" or "reliability" and his "basis of knowledge") are no longer relevant in the "totality of circumstances" analysis, but did say that it is unnecessary to satisfy both prongs to establish "probable cause."
The informant's veracity and basis of knowledge are relevant considerations in the determination of probable cause and ". . . a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Illinois v.Gates, supra, at 2329. *Page 200 
Using the "totality of circumstances" test, we hold Monley did have probable cause to stop, seize and search the appellant. The appellant was suspected of being a drug dealer in the area. Monley did not receive an anonymous tip, but received the tip from an informer whom he had used in the past and knew his reliability. The basis of the informant's tip was formed by his visit with the appellant at the appellant's girlfriend's residence. The informant told Monley what kind of contraband the appellant possessed, when and where the appellant was going to make a delivery of the contraband and he also described the vehicle in which the appellant would be traveling. Monley independently verified the informant's tip when he saw the appellant driving toward the destination, and at the time the informant had given, and in the vehicle which the informant had described.
Monley's seizure and search of the appellant was not based on a mere suspicion or rumor, but on the "likely probability" that he would find contraband on this appellant.
Since we have determined Monley had probable cause to stop, seize, and search the appellant, we must decide if exigent circumstances existed so as to justify this warrantless search and seizure. As this court has stated previously, the inherent mobility of automobiles often makes it difficult to obtain a warrant before an automobile is removed from the jurisdiction.Sterling v. State, 421 So.2d 1375 (Ala.Cr.App. 1982), and authorities cited.
Even though there was no evidence that the appellant would remove the automobile from the jurisdiction or that evidence would be destroyed before a warrant was obtained, we uphold this warrantless search. When probable cause to search exists, it makes no difference if an immediate search of the automobile is conducted or if the automobile is impounded, and a warrant is later obtained. Sterling, supra.
Therefore, we hold Monley's search of the appellant was supported by probable cause and was, in fact, proper.
The discovery of the marijuana in the open ashtray of the vehicle in which the appellant was stopped, is certainly legitimate under the "plain view" exception to the warrant requirement which,
 "`[P]ermits a warrantless seizure of evidence if the seizing officer 1) has prior justification for the intrusion, 2) comes upon the evidence inadvertently, and 3) immediately recognizes the objects discovered as evidence of wrongdoing.' Myers v. State, 431 So.2d 1342, 1344 (Ala.Cr.App. 1982), cert. quashed, 431 So.2d 1346 (Ala. 1983). See also Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Herrin v. State, 349 So.2d 103
(Ala.Cr.App.), cert. denied, 349 So.2d 110 (Ala. 1977)."
Kitchens v. State, 445 So.2d 1000 (Ala.Cr.App. 1984).
Monley was bringing the automobile which the appellant had been driving to the Sheriff's office when he noticed the marijuana in the open ashtray. He was justified in seizing the marijuana which was in his plain view in the open ashtray.
The appellant's motion to suppress was, therefore, properly denied by the trial judge.
 II
Just prior to the suppression hearing, defense counsel asked for a continuance so that he could subpoena a witness whom he believed to be the confidential informant in this case. Defense counsel had attempted to subpoena this witness, but learned that the name on the subpoena was incorrect. The trial judge denied this request, and the appellant contends this was error citing Dickerson v. State of Alabama, 667 F.2d 1364 (11th Cir. 1982).
In Dickerson, supra, at 1369-70, the court stated the following:
"III. DENIAL OF COMPULSORY PROCESS
 "The constitutional right of the accused to have compulsory process to obtain *Page 201 
witnesses in his defense is well established. See, e.g., Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); United States v. Melchor Moreno, 536 F.2d 1042 (5th Cir. 1976). Holding this Sixth Amendment right to be applicable in state proceedings, the Supreme Court in Washington
noted:
 "The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . . This right is a fundamental element of due process of law.
"388 U.S. at 19, 87 S.Ct. at 1923.
 "Not every denial of a motion for continuance to obtain witnesses violates the accused's right to compulsory process. See, e.g., McKinney v. Wainwright, 488 F.2d 28 (5th Cir.), cert. denied, 416 U.S. 973, 94 S.Ct. 1998, 40 L.Ed.2d 562 (1974). A court may not, however, refuse to grant a reasonable continuance for the purpose of obtaining defense witnesses where it has been shown that the desired testimony would be relevant and material to the defense. Hicks v. Wainwright, 633 F.2d 1146 (5th Cir. 1981); Singleton v. Lefkowitz, 583 F.2d 618 (2d Cir. 1978). In Hicks this Court recently enunciated several factors which are to be considered in determining whether an accused was deprived of his right to compulsory process by a denial of a motion for continuance:
 "[T]he diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.
 "633 F.2d at 1149 (quoting United States v. Uptain, 531 F.2d 1281, 1287 (5th Cir. 1976) (footnotes omitted))."
In reviewing the factors set out above, we do not find that the appellant was deprived of his right to compulsory process by the trial judge's failure to grant a continuance.
The fact that defense counsel had the wrong name on the subpoena shows that he did not exercise due diligence in attempting to procure this witness' presence at the suppression hearing. It seems that defense counsel had ample time before the suppression hearing to find out this witness' proper name and have him subpoenaed. The State was under no obligation to reveal the name of the informant, and the reason this witness was not subpoenaed correctly, was the absolute fault of this appellant and defense counsel.
We cannot say that there was a probability that this witness' testimony could have been procured within a reasonable time and defense counsel offered no evidence that it could have been.
Defense counsel did not make any showing of the substance of this witness' expected testimony or that it would be favorable in any way to this appellant. Nor did he present any evidence that this testimony would not be cumulative of other testimony presented at the hearing.
The only evidence presented was that defense counsel thought this witness might be "the confidential informant" in this case.
This was not sufficient to justify a continuance, and, therefore, we hold the trial judge did not abuse his discretion by failing to grant a continuance of the suppression hearing.
Furthermore, defense counsel did have an opportunity, during the trial of this case, to elicit necessary testimony from this witness.
The judgment of the trial court is due to be, and, is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 202