717 So.2d 38 (1997)
Terri Jean MONEY
v.
STATE.
CR-96-1025.
Court of Criminal Appeals of Alabama.
November 14, 1997.
Rehearing Denied March 20, 1998.
Certiorari Denied June 26, 1998.
*40 Randy C. Brackin, Dothan, for appellant.
Bill Pryor, atty. gen., and James B. Prude, asst. atty. gen., for appellee.
Alabama Supreme Court 1971141.
LONG, Presiding Judge.
The appellant, Terri Jean Money, pleaded guilty to, and was convicted of, unlawful possession of marijuana in the first degree, as proscribed by § 13A-12-213, Ala.Code 1975, and trafficking in cocaine, as proscribed by § 13A-12-231, Ala.Code 1975. The appellant was sentenced as a habitual felony offender with two prior felony convictions. For the conviction of possession of marijuana in the first degree, she was sentenced to 15 years in prison and was ordered to pay a $2,000 fine and $50 to the crime victims compensation fund. For the conviction of trafficking in cocaine, she was sentenced to life in prison and was ordered to pay a $50,000 fine, $50 to the crime victims compensation fund, and $650 in restitution to the Henry County Sheriff's Department. The appellant's sentences were to run consecutively. The appellant presents four issues on appeal from her convictions.[1]
Evidence adduced at hearings on various pretrial motions filed by the appellant indicated that on June 7, 1995, two investigators from the Pike County Sheriff's Department and a confidential informant contacted Kenneth Noel Vanlandingham, a narcotics investigator with the Henry County Sheriff's Department. The informant told Vanlandingham that the appellant and others were on their way back to Alabama from Texas in the appellant's automobile and that they would have approximately 20 pounds of marijuana and other controlled substances in their possession. The informant said that they would arrive at the appellant's house in Abbeville late that evening or early on the morning of June 8. The informant told Vanlandingham that he had previously purchased marijuana from the appellant. He gave Vanlandingham the appellant's address and a detailed description of the residence. Vanlandingham checked with the United States Post Office and verified that the appellant lived at the address the informant provided. The two investigators from the Pike County Sheriff's Department advised Vanlandingham that the informant had given them what had proven to be reliable and accurate information on prior occasions. Vanlandingham had previously worked with the two Pike County investigators.
Based on this information, at approximately 10:00 p.m. on June 7, Vanlandingham and other law enforcement officers began surveillance of a house at 406 West Washington Street in Abbeville, the appellant's residence. Vanlandingham then had the informant place two telephone calls to Darlene Johnson, an individual inside the appellant's residence, to ask Johnson when the appellant was due to arrive and to arrange a purchase of marijuana from the appellant. While listening in on the telephone conversations between the informant and Johnson, the officers learned that the appellant and other individuals would be bringing in marijuana "early in the morning" on June 8, 1995, and that they would be traveling in the appellant's gray Mercury Cougar automobile.
At 3:10 a.m. on June 8, 1995, a gray Mercury Cougar automobile pulled into the driveway of the appellant's residence, and the appellant, Jeff Seneca, and Butch Jarrell got out of the car. Darlene Johnson came *41 out of the house to meet them. With the aid of special night-vision equipment, Vanlandingham and the other officers saw the four individuals take packages from the car into the house. The four individuals made five different trips, and took seven or eight different packages or suitcase-type items into the house. After these items had been taken inside, the lights inside the house were turned out, and a Toyota truck driven by Butch Jarrell backed out of the driveway and left.
Later that morning, at approximately 8:00 a.m., Vanlandingham met with Charles W. Woodham, a district court judge in Henry County. Vanlandingham relayed the facts to Judge Woodham and then prepared an affidavit to obtain a search warrant. Among other things that Vanlandingham stated in the affidavit was the fact that he had received information from a reliable informant to the effect that the appellant had had marijuana in her possession within the last 72 hours. Judge Woodham then issued a search warrant for the appellant's residence; the warrant tracked much of the language in Vanlandingham's affidavit. Pertinent portions of the search warrant read as follows:
"Proof of affidavit having been made before me this date by Henry County Sheriff's Dept. Investigator, Noel Vanlandingham, that he has probable cause to believe and does believe that Terri J. Money, a white female, whose name is to the affiant [otherwise] unknown and others whose names are to the affiant unknown have in their possession marijuana and any other contraband or controlled substance contrary to law at 406 W. Washington Street. The house will be white with a screened in porch on the right-hand side of the house. There will be a two-story apartment building in the backyard with an upstairs apartment. There are woods to the left of the residence. There will be a gray Mercury Cougar in the driveway.
"You are therefore commanded in the day or night to make immediate search on the person of Terri J. Money, a white female, whose name is otherwise unknown to the affiant and others whose names are unknown to the affiant and in and upon the said described premises of the following property, to wit: marijuana or any other contraband or other controlled substance contrary to law, and if you find the same or any part thereof, to bring it forthwith before me at my office in the Henry County Courthouse, Abbeville, Alabama. "THIS THE 8TH DAY OF JUNE, 1995."
While the search warrant clearly showed the date it was issued, the information in the search warrant did not include the hour of its issuance.
Before executing the search warrant, Vanlandingham had the informant place a telephone call to the appellant at her residence, ostensibly to arrange payment to the appellant for a prior purchase of marijuana and to arrange a new purchase of marijuana. The informant was provided with $650 in cash from the sheriff's department to purchase marijuana from the appellant. After being searched by law enforcement officers, the informant entered the appellant's residence. A short time later, he returned to the waiting officers with a bag of marijuana he had purchased from the appellant. He turned the marijuana over to the officers at that time.
At 10:30 a.m. on June 8, 1995, Vanlandingham and the other officers executed the search warrant for the appellant's residence. The appellant was present when they conducted the search. During their search, officers found a plastic bag containing approximately 55 grams of cocaine on the bed in the appellant's bedroom. A large bag of marijuana was found in a clothes basket in the appellant's bedroom. Various items of drug paraphernalia, including roach clips, were found in a locked box in her bedroom. The appellant's purse contained a small bag of marijuana. More than $1,700 in cash was also found in the appellant's purse, $650 of which was identified by the serial numbers as the money the sheriff's department had given the informant to purchase marijuana from the appellant. In searching the kitchen area of the house, officers found several plastic bags of marijuana in the freezer; plastic bags containing marijuana residue were found in a garbage can; plant material and a partially smoked marijuana cigarette were found in an ashtray on top of the refrigerator; *42 and an electronic scale was found near the refrigerator. Other items of drug paraphernalia were found in the living room, and razor blades were found on a table in the den. Two plastic bags of marijuana, rolling papers and smoking devices, and some Valium and other assorted pills were found in Jeff Seneca's bedroom in the residence. Hashish oil was found in Darlene Johnson's overnight bag in her car, which was parked in the backyard of the appellant's residence. A small amount of marijuana residue was found inside the appellant's automobile. The total weight of the marijuana found inside the appellant's house was nearly two pounds. Butch Jarrell eventually led officers to more marijuana, weighing approximately 18 pounds, which had been hidden in a location near the Dale County/Henry County line.
The appellant was arrested and was later indicted on charges of possession of marijuana in the first degree (possession of marijuana for other than personal use, see § 13A-12-213(a), Ala.Code 1975) and for trafficking in cocaine. Shortly after the appellant's arrest, and before she was tried, the state filed a petition in the circuit court, pursuant to § 20-2-93, Ala.Code 1975, seeking the civil forfeiture of the appellant's house and 1991 Mercury Cougar automobile on the ground that the property had been used to facilitate violations of Alabama's controlled substance laws. Following an ore tenus hearing on the state's petition, the circuit court ordered that the appellant's house and automobile be forfeited to the state. After entry of the forfeiture judgment, the appellant filed a motion to dismiss the indictments, stating as grounds that she had been "punished" for the same drug offenses by the forfeiture of her property in the civil action and that, consequently, prosecution for the offenses would violate the Double Jeopardy Clause. This motion was denied, as was the appellant's motion to suppress the state's evidence. The appellant then withdrew her initial pleas of not guilty and pleaded guilty to the charges in the indictments.

I.
The appellant contends that the search of her house was illegal and that, therefore, the evidence seized during the search was due to be suppressed because, she says, there was no probable cause to support the issuance of the search warrant. The appellant reserved the right to appeal as to this issue, which she raised in a motion to suppress, when entering her guilty plea.
When determining probable cause, "[a]n issuing judge's determination that sufficient probable cause existed to support the warrant is `entitled to great deference and is conclusive in the absence of arbitrariness,'" Wamble v. State, 593 So.2d 109, 110 (Ala.Cr. App.1991), quoting United States v. Pike, 523 F.2d 734 (5th Cir.1975), cert. denied, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976), and a reviewing court need determine only that a magistrate or judge had a "substantial basis" for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); Sullivan v. State, 651 So.2d 1138 (Ala.Cr.App. 1994); McCray v. State, 501 So.2d 532 (Ala. Cr.App.1986). This court has previously stated:
"The present test for determining whether an informant's tip establishes probable cause is the flexible totality-ofthe-circumstances test of Illinois v. Gates, [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)]. The two prongs of the test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), involving the informant's veracity or reliability and his basis of knowledge, `are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.' Gates, [462 U.S. at 233,] 103 S.Ct. at 2329.... Probable cause involves `a practical, common sense decision whether, given all the circumstances, ... including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a *43 particular place.' Gates, [462 U.S. at 238,] 103 S.Ct. at 2332."
Pugh v. State, 493 So.2d 388, 392 (Ala.Cr. App.1985), aff'd, 493 So.2d 393 (Ala.1986).
"Reference to a confidential informant's `track record' of past performances is a viable means of determining his credibility." Reese v. State, 456 So.2d 341, 349 (Ala. Cr.App.1982), cert. denied, 464 U.S. 838, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983). See also Moynes v. State, 568 So.2d 392, 393 (Ala.Cr. App.1990); Carter v. State, 435 So.2d 137, 139 (Ala.Cr.App.1982). An informant's reliability may be verified by other law enforcement officers who have worked with the informant on prior occasions. See Usery v. State, 668 So.2d 919, 921 (Ala.Cr.App.1995). See also Ex parte Boyd, 542 So.2d 1276, 1284 (Ala.), cert. denied, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989) (probable cause may be established from the collective knowledge of the police, citing United States v. Hawkins, 595 F.2d 751, 752-53 n. 2 (D.C.Cir. 1978), cert. denied, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979)). In addition, corroboration supplied by the personal observations of the police officers lends support to the reliability and veracity of the informant. See Moynes, 568 So.2d 392; Dale v. State, 466 So.2d 196 (Ala.Cr.App.1985).
Applying the "totality-of-the-circumstances" test set out in Gates, supra, to determine the existence of probable cause, we conclude that there was ample probable cause for the issuance of the search warrant in this case. Investigator Vanlandingham received information from a reliable confidential informant. Vanlandingham verified the informant's reliability with other law enforcement officers who had worked with the informant on prior occasions and had found that the informant had given them what had proven to be reliable and accurate information. The informant gave Vanlandingham the address of the appellant's residence and a specific description of her residence; described the kind of contraband the appellant possessed, the vehicle in which the appellant would be traveling, and the other individuals with whom the appellant would be traveling; and provided an exact time frame in which the appellant would be arriving at her residence with a shipment of marijuana. See Dale, 466 So.2d at 200. The bases of the informant's knowledge were the fact that the informant had purchased marijuana from the appellant in the past and the information he gained from the telephone conversations with Darlene Johnson before the appellant's arrival on the morning of June 8, 1995. See Williams v. State, 565 So.2d 1233, 1236 (Ala. Cr.App.1990). Vanlandingham was able to verify much of the informant's information through personal observation and independent investigation, and there was sufficient information from which it could reasonably be inferred that the informant had gained his information in a reliable way. Hatton v. State, 359 So.2d 822, 826-27 (Ala.Cr.App. 1977), writ quashed, 359 So.2d 832 (Ala.1978). The investigating officers corroborated the informant's information and thus they did not need to rely solely upon the informant's accuracy and credibility. Vanlandingham's observation of the activities during the surveillance of the appellant's house, the information officers gained from listening in on the telephone conversations between the informant and Darlene Johnson, and the facts that tended to establish the informant's reliability and the basis of his knowledge support a finding of probable cause for the issuance of the search warrant.
The appellant argues that the search warrant should not have been issued because, he says, Vanlandingham's affidavit in support of the warrant contained only the informant's hearsay statements and did not contain Vanlandingham's personal observations or personal observations of the other officers sufficient to establish probable cause. This argument must fail in light of our holding in Wamble:
"When reviewing a lower court's decision to issue a search warrant, this Court looks to the totality of the information available to the issuing judge and does not restrict its review to the `four corners' of the affidavit. United States v. Character, 568 F.2d 442 (5th Cir.1978).... Even in cases where the affidavit on its face is insufficient to support a finding of probable cause, oral testimony may be presented to show that there was sufficient evidence *44 disclosed to the issuing judge which would sustain his finding that probable cause existed at the time the warrant was issued."
593 So.2d at 110-11. At the suppression hearing, Vanlandingham testified that before he prepared the affidavit and Judge Woodham issued the search warrant, he relayed the facts of the case to the judge in a face-toface conversation regarding his observations and those of the other officers, as well as the information supplied by the informant. Thus, the record reflects that there was sufficient evidence disclosed to the issuing judge to sustain his finding that probable cause existed when the search warrant was issued.
Because probable cause to issue the search warrant existed, the trial court correctly denied the appellant's motion to suppress on this ground.

II.
The appellant next contends that the search warrant was defective on its face because, he says, it did not comply with the requirements of Rule 3.10, Ala.R.Crim.P. Rule 3.10 provides, in pertinent part, that the issuing judge or magistrate "shall endorse the warrant, showing the hour, date, and the name of the law enforcement officer to whom the warrant was delivered for execution." The appellant contends that the date and hour of issuance were not included on the search warrant, and that this omission invalidated the warrant and required the suppression of the evidence seized pursuant to its execution. The appellant reserved the right to appeal as to this issue when she entered her guilty plea.
We note at the outset that the record clearly shows that the search warrant does indeed contain the date of issuance; the appellant's assertion that is does not is incorrect. The appellant is correct, however, in stating that the hour of issuance does not appear on the face of the search warrant. This matter presents a case of first impression.
We hold that the requirement in Rule 3.10 that the search warrant be endorsed with the hour of its issuance is ministerial or directory in nature. An omission with respect to this particular provision will not, absent a showing of prejudice, necessitate the exclusion or suppression of evidence seized pursuant to execution of the search warrant.
In State v. Heflin, 611 So.2d 441 (Ala.Cr. App.1992), this court made a similar holding when confronted with the issue whether failure to leave a copy of the search warrant and the inventory with the defendant or at the premises searched at the time of a search, as required by Rule 3.11, Ala.R.Crim.P., necessitated the suppression of evidence seized as a result of the execution of the search warrant. We held that this provision of Rule 3.11 was merely ministerial or directory in nature, and that, therefore, failure to comply with the provision did not invalidate the search conducted pursuant to the warrant. As we stated in Heflin:
"`In many jurisdictions, statutes or rules declare that an officer executing a search warrant must exhibit or deliver a copy of the warrant at the place searched.... Provisions of this type are most desirable, as they "put the possibly aggrieved party on notice of the authority and purported reasons for the search, and enable him to prepare to contest it if he so desires," and also make it possible for him to "know that there is color of authority for the search, and that he is not entitled to oppose it by force."
"`Under the prevailing view, these provisions are deemed to be ministerial only, so that "absent a showing of prejudice" failure to comply with them does not void an otherwise valid search....
"`It is rather common for court rules or statutes to provide that a receipt must be given for the things seized pursuant to a search warrant.... The reasons for giving the occupant a copy of the warrant, discussed above, "apply likewise to the requirement of a receipt." But here as well the prevailing view is that noncompliance with such a provision does not compel exclusion of the evidence obtained pursuant to the warrant. It has been noted that a defendant who does not obtain a receipt will nonetheless be able to obtain an inventory *45 of the items taken upon application to the court.'"
611 So.2d at 442-43, quoting 2 W. LaFave, Search and Seizure §§ 4.12(a) and (b) at 358-60 (2d ed.1987) (footnotes omitted). In Heflin, we reasoned that the provisions of Rule 3.11 were for informational purposes only and were not intended to create or affect any substantive rights. Likewise, the provision of Rule 3.10 requiring that the search warrant be endorsed with the hour of its issuance is not necessarily related to the essential functions of the warrant, which include "imbu[ing] arresting or searching officers with a greater appearance of authority and assur[ing] the individual whose property is searched or seized of the lawful authority of the executing officers, their need to search, and the limits of their power to search, and that the individual perceives police procedures against him as less intrusive." Houk v. State, 455 So.2d 115, 117-18 (Ala.Cr. App.1984), citing Gates, 462 U.S. 213, 103 S.Ct. 2317. Furthermore, as was the case with the inventory receipts discussed in Heflin, the hour of the search warrant's issuance may be established by testimony at an appropriate hearing should an issue as to the timing of the warrant arise. Accordingly, we hold that failure to comply with Rule 3.10's hour-of-issuance requirement does not void an otherwise valid search, absent a showing of prejudice.[2]
This court has held that we will not "`invalidate [a search] warrant by interpreting the affidavit in a hypertechnical rather than a common sense manner.'" Moore v. State, 650 So.2d 958, 965 (Ala.Cr.App.), cert. denied, 650 So.2d 966 (Ala.1994), cert. denied, 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995), quoting Maddox v. State, 502 So.2d 779, 785 (Ala.Cr.App.1985). The application of hypertechnical scrutiny to search warrants "would be inconsistent with the Fourth Amendment's strong bias for searches conducted pursuant to valid warrants." Houk, 455 So.2d at 117, citing Gates, 462 U.S. 213, 103 S.Ct. 2317.
Our holding today is consistent with our holding in Usery v. State, 668 So.2d 919 (Ala.Cr.App.1995). In Usery, we declined to construe certain provisions of Rule 3.10 in a hypertechnical manner; we held that a search warrant was not invalid on the grounds (1) that it was not directed to a specific "law enforcement officer" as that term is defined in Rule 1.4(p), Ala.R.Crim.P.; (2) that it did not designate a specific "law enforcement officer" who was to execute the warrant; and (3) that it did not specify that the warrant was to be executed within 10 days from the date of its issuance. Usery, 668 So.2d at 921-22.
Here, the appellant has not shown that she suffered any prejudice from the issuing judge's failure to endorse the search warrant with the hour of its issuance. The record establishes that Investigator Vanlandingham obtained the otherwise valid search warrant at 8:00 a.m. on June 8, 1995. The search warrant was executed at approximately 10:30 a.m. that same morning, only two and one-half hours later. The question of timing is simply not an issue essential to the validity of the search warrant in this case. Therefore, the trial court correctly denied the appellant's motion to suppress the evidence seized during the search on the ground that the search warrant was not endorsed with the hour of its issuance.

III.
The appellant contends that she was twice placed in jeopardy by the fact that the state pursued a criminal conviction after it had succeeded in a prior in rem civil forfeiture action under § 20-2-93, Ala.Code 1975,[3] both actions arising out of the prosecution for possession of marijuana in the first degree and trafficking in cocaine. The appellant reserved the right to appeal as to this issue when she entered her guilty plea.
*46 The appellant's double jeopardy claim is foreclosed by our holding in Wilhite v. State, 689 So.2d 221 (Ala.Cr.App.1996), where, in light of the United States Supreme Court's recent decision in United States v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), we held that in rem civil forfeitures under § 20-2-93 do not constitute "punishment" for purposes of the Fifth Amendment's Double Jeopardy Clause. In Ursery, the Supreme Court addressed the question of how civil forfeiture proceedings interact with the Double Jeopardy Clause. The Court recognized that civil forfeitures generally "do not constitute `punishment' for purposes of the Double Jeopardy Clause" and specifically held that in rem civil forfeitures under 21 U.S.C. § 881which, like § 20-2-93, provides for civil forfeiture of property used to facilitate drug violations do not preclude subsequent criminal prosecutions for the same underlying drug violations on double jeopardy grounds. Ursery, 518 U.S. at 270-71, 116 S.Ct. at 2138.
The Supreme Court observed in Ursery that its prior cases reviewing civil forfeitures under the Double Jeopardy Clause had "adhere[d] to a remarkably consistent theme" establishing that "in rem civil forfeiture is a remedial civil sanction, distinct from potentially punitive in personam civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause," 518 U.S. at 278, 116 S.Ct. at 2142. However, the Court stopped short of holding that in rem civil forfeitures are per se exempt from double jeopardy concerns and did not foreclose the possibility that in certain instances such forfeitures may implicate the Double Jeopardy Clause. The Court explained, in the heart of its holding, that the test for determining whether civil forfeiture proceedings constitute "punishment" for double jeopardy purposes is the two-part test the Court had formulated in United States v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). In Wilhite, we summarized the two-part test of 89 Firearms as follows:
"First, the court must consider legislative intent; if it appears that the forfeiture statute is intended to be a solely remedial sanction, then the inquiry must proceed. [89 Firearms,] 465 U.S. at 363, 104 S.Ct. at 1105. The court must then analyze whether the effect of the forfeiture scheme is so extreme as to make the sanction punitive, regardless of the remedial intent. Id., at 365, 104 S.Ct. at 1106-07.
689 So.2d at 223; see Ursery, 518 U.S. at 287-89, 116 S.Ct. at 2147.
Clarifying 89 Firearms` two-part test, the Supreme Court in Ursery noted that the fact that an in rem forfeiture is designated as "civil" by the legislature "establishes a presumption that it is not subject to double jeopardy" and that this presumption may be overcome only "where the `clearest proof' indicates that an in rem civil forfeiture is `so punitive either in purpose or effect' as to be equivalent to a criminal proceeding." Ursery, 518 U.S. at 289 n. 3, 116 S.Ct. at 2148 n. 3., quoting 89 Firearms, 465 U.S. at 365, 104 S.Ct. at 1106. Applying the two-part test of 89 Firearms to 21 U.S.C. § 881, the Court in Ursery ruled that § 881 reflects a clear Congressional intent that forfeiture proceedings under the statute are to be civil in nature and that there is `little evidence,' much less the `clearest proof' that proceedings under the statute "are so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." Ursery, 518 U.S. at 290, 116 S.Ct. at 2148.
Consistent with the Supreme Court's decision in Ursery, this court in Wilhite applied the two-part test of 89 Firearms to § 20-2-93 and held (1) that the statute reflected a legislative intent that forfeiture proceedings brought under its provisions are to be civil in nature and (2) that no proof had been offered that the statute provided sanctions so severe as to render proceedings under it "punishment" for purposes of the Double Jeopardy Clause. Wilhite, 689 So.2d at 224.[4] Thus, *47 we rejected the claim in Wilhite that a criminal prosecution for drug offenses was barred by the Double Jeopardy Clause because of a prior forfeiture action under § 20-2-93 against property that had been used to facilitate those offenses.
Importantly, the Supreme Court in Ursery indicated that when applying the two-part test of 89 Firearms, a court does not look at the specific facts underlying an individual forfeiture, but instead looks to the statutes upon which forfeitures are based to determine whether proceedings under those statutes are generally considered criminal. The Ursery court emphasized this point when it stated that "the case-by-case balancing test set forth in [United States v.] Halper, [490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989),] in which a court [when determining whether a civil penalty, as opposed to civil forfeiture, implicates the Double Jeopardy Clause] must compare the harm suffered by the government against the size of the penalty imposed, is inapplicable to civil forfeiture." Ursery, 518 U.S. at 284, 116 S.Ct. at 2145. As the Court noted, the relevant question is "whether a statute is punitive under the Double Jeopardy Clause." Id. at 292, 116 S.Ct. at 2149 (emphasis added). Accordingly, our holding in Wilhite that forfeitures under § 20-2-93 do not implicate the Double Jeopardy Clause applies to similar double jeopardy claims concerning § 20-2-93 in all cases, foreclosing the appellant's double jeopardy claim here.
Notwithstanding our holding in Wilhite, the appellant argues that the courts of this state have "historically held" that § 20-2-93 is "penal in nature" and that, therefore, a forfeiture under that statute does in fact implicate the Double Jeopardy Clause. However, a review of Alabama cases holding that § 20-2-93 (and its predecessor statute) is penal in nature reveals that none of those cases state this proposition in the context of the Double Jeopardy Clause and, further, that questions relating to double jeopardy have not been even remotely at issue where this proposition has been stated. See, e.g., *48 Reeder v. State ex rel. Myers, 294 Ala. 260, 314 So.2d 853 (1975); Jackson v. Evans, 379 So.2d 1236 (Ala.1980); Nicaud v. State ex rel. Hendrix, 401 So.2d 43 (Ala.1981); and Agee v. State, 627 So.2d 960 (Ala.Civ.App.1993). Moreover, as the United States Supreme Court has held, an in rem civil forfeiture may indeed be "penal in nature" for purposes of the Eighth Amendment's Excessive Fines Clause without being penal for purposes of the Fifth Amendment's Double Jeopardy Clause. Ursery, 518 U.S. at 285-89, 116 S.Ct. at 2146-47 (discussing differences between claims under the Double Jeopardy Clause and under the Excessive Fines Clause and distinguishing the issue in the case under consideration from the issue presented in Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)).[5]
Because the appellant's property was forfeited pursuant to § 20-2-93, her double jeopardy claim necessarily fails.

IV.
The appellant contends that the forfeiture of her house and her automobile in the civil proceeding, combined with the subsequent imposition of prison sentences and fines in the criminal prosecution, violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. However, she did not raise this specific claim in the trial court. It is clear from the record of the criminal proceedings that, in the trial court, the appellant's excessivefines claim was limited to the forfeiture of her property to the state under § 20-2-93 in the prior civil action. At the hearing on her motion to dismiss the indictments, and when reserving her right to appeal as to the excessive-fines issue, the appellant never mentioned the fines and prison sentences resulting from her convictions for the drug offenses, but instead referred only to the loss of her house and her automobile in the civil forfeiture proceeding. Indeed, when she presented the trial court with her excessivefines claim the appellant had not even been fined or sentenced for these convictions. Although the appellant filed a motion to withdraw her guilty plea, she did not raise an excessive-fines claim in that motion. To the extent that the appellant did present the trial court with an excessive-fines claim, she sought no reduction in the amount of her asset forfeiture or in her criminal fines and prison sentences, but instead sought to interpose the Excessive Fines Clause as a complete bar to her criminal prosecution, a claim more akin to one under the Double Jeopardy Clause of the Fifth Amendment. Thus, we find that the appellant did not preserve her excessive-fines claim insofar as it pertains to the criminal sanctions she received upon her conviction.
In Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the United States Supreme Court held that the Excessive Fines Clause applies to property forfeited pursuant to in rem civil proceedings. Thus, the appellant's limited claim that the civil forfeiture of her property violated the Excessive Fines Clause would be subject to review if it had been raised in the proper forum. However, in contending on appeal that the combined effect of the civil forfeiture and the criminal sanctions violates the Excessive Fines Clause, the appellant mixes apples and oranges. She improperly lumps together the property forfeited in the civil proceeding and the monetary fines and prison terms imposed in the criminal proceeding. She cites no authority in support of the underlying premise of her claim, i.e., that the value of property forfeited in a civil proceeding can be added to the fines and sentences *49 imposed in a criminal proceeding for purposes of an excessive-fines analysis.
In the trial court, the appellant correctly contended that Austin applies to civil property forfeitures, and the cases applying Austin typically do so in the context of forfeitures. The fines arising out of the appellant's criminal convictions were mandatory monetary fines established by the legislature and limited by statute. The need for applying a rigorous excessive-fines analysis to property forfeitures, where the value of the property subject to forfeiture is not necessarily limited by statute, is much more manifest than the need for applying a rigorous excessive-fines analysis to monetary fines that are dictated by a statute. Accordingly, the considerations in assessing an excessive-fines claim relating to property forfeitures under the Austin rationale differ materially from the considerations in assessing an excessive-fines claim relating to monetary fines set by statute. Austin has engendered a large body of caselaw concerned with whether to apply an instrumentality or proportionality analysis (or some combination) to determine whether forfeitures are excessive. The analysis applied to legislatively set fines, however, is much simpler. For a monetary fine set by statute to be "excessive" in a constitutional sense, "it must be so disproportionate to the offense as to shock public sentiment and contrary to the judgment of reasonable people concerning what is proper under the circumstances." Wheatt v. State, 410 So.2d 479, 482 (Ala.Cr. App.1982), quoting Hindt v. State, 421 A.2d 1325, 1333 (Del.Supr.1980). See Williams v. State, 420 So.2d 91, 93 (Ala.Cr.App. 1982) (whether a fine fixed by a legislature constitutes an excessive fine "is to be determined largely by the preventive effect upon the commission of the particular kind of crime for which the fine is imposed").
Moreover, the appellant's claim with respect to her prison sentences is subject not to the Excessive Fines Clause of the Eighth Amendment but to the Cruel and Unusual Punishments Clause of that same amendment. The Supreme Court has indicated that the two clauses should be interpreted separately. "Unlike the Cruel and Unusual Punishments Clause, which is concerned with matters such as the duration or conditions of confinement, `[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" Alexander v. United States, 509 U.S. 544, 558, 113 S.Ct. 2766, 2775, 125 L.Ed.2d 441 (1993), quoting Austin, 509 U.S. at 609-10, 113 S.Ct. at 2805-06 (emphasis added).
As we have indicated, the appellant's excessive-fines claim in the trial court was limited to the property forfeited under § 20-2-93 in the prior civil action. However, it is not this court's placejust as it was not the place of the trial court presiding over the criminal proceedingsto intrude upon the civil proceedings that resulted in the forfeiture of the appellant's property. The proper forum for the appellant to raise her excessive-fines claim with respect to her property was in the circuit court that presided over the civil forfeiture proceedings; if she received an adverse ruling from the circuit court, she could have then pursued this issue in an appeal to the Court of Civil Appeals, the court with appellate jurisdiction over civil cases involving amounts of the value of the assets forfeited by the appellant. § 12-3-10, Ala.Code 1975. See State v. Baker, 703 So.2d 333, 334 (Ala.1997) (noting that the Court of Civil Appeals has appellate jurisdiction over appeals from civil forfeiture proceedings). The appellant did in fact raise her excessive-fines claim in the civil proceedings. She cannot now relitigate that claim in this court by "bootstrapping" it onto the criminal proceedings and suggesting that she is attacking the combined effect of the forfeiture of her property and the imposition of prison sentences and fines in the criminal prosecution. We are not a court of plenary appellate jurisdiction, see § 12-3-9, Ala.Code 1975, and we have no authority to set aside the rulings of a circuit court that was exercising proper jurisdiction over civil proceedings or to set aside the judgment of the reviewing civil appellate court. See § 13A-1-8(a)(2), Ala.Code 1975 stating, ("[t]his title does not bar, suspend or otherwise affect any right or liability to damages, penalty, forfeiture or other remedy authorized by law to be recovered or enforced in a civil action, regardless of whether the conduct involved in the proceeding *50 constitutes an offense defined in this title"). Moreover, it could not have been the intent of the legislature for the criminal trial court, or for this court, to effect a reduction in statutorily mandated prison terms or fines in order to offset the effects of a property forfeiture sustained in an in rem civil proceeding.
The appellant's excessive-fines claim is not properly before this court.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, COBB, and BROWN, JJ., concur.
BASCHAB, J., concurs specially with opinion.
BASCHAB, Judge, concurring specially.
I concur in the result only as to Part IV of the majority's opinion. I am disturbed with the majority's finding that the appellant did not preserve her Excessive Fines violation claim. However, this opinion focuses primarily on my concerns about the procedure for confiscation of property under the state's forfeiture statute.
Much of the majority opinion is a correct statement of the law interpreting the Excessive Fines Clause of the Eighth Amendment. However, although it was not bound to address this matter, the majority's opinion condones a consistent encroachment on the due process rights of individuals whose property is forfeited before the determination of criminal guilt or innocence. This type of claim should never reach this court in this posture. In order to prevent a violation of due process, a forfeiture action pursuant to § 20-2-93 should occur after an adjudication as to the guilt or innocence of the accused.
This special concurrence stems from my belief that allowing civil forfeitures prior to criminal prosecution of an individual is an infirmity in the law which can only be cured by the state legislature. I therefore concur only in the result reached by the majority.
NOTES
[1] The appellant's brief to this court refers to a fifth issue. However, she does not include any argument, just the bare statement of the issue. Therefore, this court declines to consider this issue. See Rule 28, Ala.R.App.P.
[2] It should be noted that the search warrant in this case was not an anticipatory search warrant.
[3] "The Drug Profits Forfeiture Act of 1988," codified at § 20-2-93, Ala.Code 1975, allows the state to institute in rem civil proceedings to seek the forfeiture of proceeds from illegal drug transactions, of property derived from such proceeds, and of property used to facilitate violations of Alabama's controlled substance laws.
[4] Although we did not specifically say so in Wilhite, we point out here that the provisions of § 20-2-93 are substantially similar to those contained in 21 U.S.C. § 881, the federal forfeiture statute discussed in Ursery. The state and federal statutes clearly embody the same goals. As is the case with its federal counterpart, § 20-2-93 contains various procedural mechanisms reflecting the civil nature of proceedings under the statute. An action under § 20-2-93 is in rem; that is, it is against the property itself."` [A]ctions in rem have traditionally been viewed as civil proceedings.'" Ursery, 518 U.S. at 277, 116 S.Ct. at 2141, quoting 89 Firearms, 465 U.S. at 363, 104 S.Ct. at 1105. Section 20-2-93 provides that notice to an individual is not necessary in all instances. The "probable cause" standard of proof for sustaining a forfeiture under § 20-2-93 is less stringent than the "beyond a reasonable doubt" standard for obtaining a criminal conviction. See § 20-2-93(b)(4). With respect to property other than real property or fixtures, once the state has shown that the property is subject to forfeiture, the burden is on the property owner or bona fide lienholder to prove that he or she was unaware that the property was used to facilitate a violation of the controlled substance laws. § 20-2-93(h); see Ursery, 518 U.S. at 289-91, 116 S.Ct. at 2148. The fact that the state has the burden under § 20-2-93 of proving that an owner of real property was aware of its use in drug violations is not necessarily indicative of the criminal nature of the proceeding; instead, that fact may be said to reflect the state's concern that it seize the real property of only those persons who knew that the property was being put to improper use. Proceedings under § 20-2-93 are governed, with limited exceptions, by the procedures for civil condemnation actions under §§ 28-4-286 through -290, Ala.Code 1975. See § 20-2-93(h). It is also clear that the sanction provided in § 20-2-93, like the sanction provided in 21 U.S.C. § 881, is not so punitive as to overcome the civil attributes of the statute and render forfeiture a criminal proceeding. As the Supreme Court noted with respect to § 881 in Ursery, requiring the forfeiture of property used to facilitate drug violations encourages property owners "to take care in managing their property and ensures that they will not permit that property to be used for illegal purposes." Ursery, 518 U.S. at 290, 116 S.Ct. at 2148. As the Supreme Court also observed in Ursery, in rem civil forfeiture proceedings have not traditionally been viewed as punitive in the context of the Double Jeopardy Clause. Further indicating that forfeiture proceedings under § 20-2-93, like proceedings under § 881, are not criminal is the fact that § 20-2-93, like the federal statute, does not require proof of scienter to sustain a forfeiture; property may be subject to forfeiture even if no one appears to claim it. See Ursery, 518 U.S. at 291-93, 116 S.Ct. at 2149. While the "innocent owner" defense to forfeiture actions under § 20-2-93 suggests a potentially punitive aspect to the statute, as the Supreme Court indicated in Ursery with respect to a similar provision in § 881, the availability of this defense is not fatal to a conclusion that the statute provides a remedial civil sanction. See Ursery, 518 U.S. at 291-93, 116 S.Ct. at 2149. Furthermore, the deterrent aspect of the forfeiture statute is not inconsistent with its civil nature. Finally, the fact that the forfeiture statute does not come into play until a criminal offense occurs does not render it criminal in nature, because the legislature may impose both civil and criminal sanctions with respect to the same conduct. See Ursery, 518 U.S. at 291-93, 116 S.Ct. at 2149.
[5] We note that in Wilhite this court stated: "To the extent our holding in the present case [i.e., that forfeiture under § 20-2-93 is not a punishment for purposes of the Double Jeopardy Clause] conflicts with the holding of the line of Alabama cases which states that § 20-2-93, Ala. Code 1975, is penal in nature, the holding of that line of cases is overruled." Wilhite, 689 So.2d at 224. This statement is followed by citations to a case decided by the Alabama Supreme Court and a case decided by the Alabama Court of Civil Appeals. However, this court does not have the authority to overrule decisions of the Alabama Supreme Court or the Court of Civil Appeals. In any event, as we suggest here, our holding in Wilhitethat forfeiture under § 20-2-93 does not amount to punishment for purposes of double jeopardydoes not, in fact, conflict with the holding of "the line of Alabama cases" stating that § 20-2-93 is penal in nature, because prior Alabama cases have never made such a holding in the context of the Double Jeopardy Clause.